## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Toyota Motor Sales, U.S.A., Inc., | ) | Civil Action No.  0:22-cv-1681 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| Allen Interchange LLC, Applegate | ) | |
| Supply, Patriot Parts of Texas, | ) | **DEMAND FOR JURY TRIAL** |
| Bluestone Auto Products, OEM | ) | |
| Surplus, Autoworks Distributing, and | ) | |
| Defendants DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Toyota Motor Sales, U.S.A., Inc. asserts the following claims against Defendants Allen Interchange LLC, Applegate Supply, Patriot Parts of Texas, Bluestone Auto Products, OEM Surplus, Autoworks Distributing, and Defendants DOES 1-10 (collectively, the "Defendants").

### NATURE OF ACTION

1.     This is an action for disgorgement of profits and injunctive relief for (i) trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a)(1)(A); (ii) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (iii) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (iv) false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); and (v) related claims arising under common law and Minnesota law.

## **THE PARTIES**

2.      Plaintiff Toyota Motor Sales, U.S.A., Inc. ("Toyota USA") is a corporation organized and existing under the laws of the State of California with its principal place of business located in Plano, Texas.

3.      Toyota USA is the authorized importer and distributor of Toyota-branded parts for sale in the continental United States, including Alaska ("United States"). Toyota USA has been granted a license to distribute Toyota-branded parts in the United States in association or in connection with the trademarks and tradenames, registered and unregistered, of Toyota Motor Corporation, and has the right to enforce those rights and sublicense those rights to authorized Toyota Dealers, distributors, and others.

4.      Upon information and belief, Allen Interchange LLC ("Allen Interchange") is a limited liability company organized and existing under the laws of the State of Minnesota with its principal place of business located in New Hope, Minnesota.

5.      Upon information and belief, Applegate Supply is a business affiliate of Allen Interchange, with its principal place of business in New Hope, Minnesota.

6.      Upon information and belief, Patriot Parts of Texas is a business affiliate of Allen Interchange, with its principal place of business in Bloomington, Minnesota.

7.      Upon information and belief, Bluestone Auto Products is a business affiliate of Allen Interchange, with its principal place of business in New Hope, Minnesota.

8.      Upon information and belief, OEM Surplus is a business affiliate of Allen Interchange, with its principal place of business in Brainerd, Minnesota.

9.      Upon information and belief, Autoworks Distributing is a business affiliate of Allen Interchange, with its principal place of business in Minneapolis, Minnesota.

10.     Toyota USA is presently unaware of the true names and identities of defendants "DOES 1-10" herein but is informed and believes that persons or entities in addition to the specifically-named Defendants herein are directly and personally contributing, inducing, and/or engaging in the sale of infringing goods as alleged herein as partners and/or suppliers to the Defendants, and are legally liable for the matters alleged in this Complaint. Toyota USA will amend or seek leave to amend this Complaint as appropriate to add additional specific defendants upon determining the true names and identities of the "DOE" defendants.

11.     Toyota USA is informed and believes, and on that basis alleges, that during all times mentioned herein, each of the Defendants was the duly authorized agent, servant, or representative of each other defendant and was acting at all times both on its own behalf and on behalf and within the course and scope of its agency or representative capacity, with the knowledge and consent of the other defendants.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(b) and 1367.

13.     This Court has personal jurisdiction over Defendants because they are organized and existing under the laws of Minnesota and have their principal places of business in Minnesota.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants reside within this judicial district.

## THE TOYOTA MARKS AND TOYOTA USA'S RIGHTS TO THE TOYOTA MARKS

15.     Toyota USA sells automobiles, automotive parts, accessories, and related products and services under the Toyota trademarks and tradenames described below ("Toyota Marks").

16.     Since 1957, Toyota USA has been the exclusive authorized importer of, among other things, Toyota motor vehicles and Toyota-brand automotive parts and accessories ("Genuine Toyota Parts") into the United States. Genuine Toyota Parts are sold through authorized channels and are intended for sale and use only in the United States.

17.     Toyota USA is the licensee of the trademarks owned by Toyota Motor Corporation—used in the United States in association or connection with the promotion, distribution, sale, and providing of Toyota products and services—including Genuine Toyota Parts, including but not limited to the following trademarks:

| Trademark | Registration Number | Registered Date |
|-----------|---------------------|-----------------|
| TOYOTA | 843138 | January 30, 1968 |
| TOYOTA | 1721365 | October 6, 1992 |
| LEXUS | 1574718 | January 2, 1990 |
|  | 1797716 | October 12, 1993 |
|  | 3463476 | July 8, 2008 |
|  | 1834147 | May 3, 1994 |

18.     All of the above federal and state registrations are in full force and effect and are in good standing.

19.     Independent of the foregoing registrations, common-law rights exist in the Toyota Marks, and Toyota USA has the rights to enforce those common-law rights.

20.     The name Toyota and the Toyota Marks have been used in commerce continuously in the United States by Toyota USA prior to Defendants' usage of the same or similar marks.

21.     Toyota USA has expended significant time, money, and effort in ensuring that Genuine Toyota Parts comply with stringent internal quality standards and with state and federal laws and regulations in the United States.

22.     For many years, Toyota USA has committed substantial financial and other resources in the United States to advertise, promote, sell, service, and warrant Toyota USA products and related services, including Genuine Toyota Parts. Toyota USA and its authorized distributors and Dealers have spent many millions of dollars advertising their products and services under the Toyota Marks. Because of these efforts, Toyota USA has developed substantial goodwill in the United States for the name Toyota, Toyota Marks, Genuine Toyota Parts, and related products and services.

23.     Toyota USA's commitment of substantial efforts and resources has resulted in a reputation for exceptionally high-quality standards. Toyota USA has also developed marketing strategies and designed or adopted packaging, promotional materials, and specific products for the market in the United States, consistent with its reputation and high-quality standards. Toyota USA protects its reputation and goodwill by maintaining

the highest standards in its products, appearance, packaging, shipping, customer care, and warranty service.

## MANUFACTURE, USE, AND SALE OF GENUINE TOYOTA PARTS

24.     Authorized suppliers from around the world manufacturer Genuine Toyota Parts according to Toyota Motor Corporation's designs, specifications, and quality standards.

25.     Toyota USA's automotive parts and accessories, including Genuine Toyota Parts, are sold to customers in the U.S. and are sold to such customers through authorized Toyota Dealers ("Authorized Dealers").  Authorized Dealers are granted the rights from Toyota USA to sell Genuine Toyota Parts to retail customers in the U.S.

26.     Genuine Toyota Parts are also sold by Toyota USA to Authorized Dealers in the United States for replacement of original parts in Toyota-brand vehicles.

27.     In the United States, Authorized Dealers are required to perform warranty work using only Genuine Toyota Parts.

28.     Genuine Toyota Parts designated for sale and/or use in the United States are designed and manufactured in accordance with applicable U.S. standards and regulations, including environmental and federal motor vehicle safety standards.

29.     Toyota USA has developed guidelines and practices related to the packaging and shipping of Genuine Toyota Parts both into and within the United States. These strategies and practices are designed to ensure that Genuine Toyota Parts maintain their integrity during the shipping process.

30.     Although Genuine Toyota Parts may be physically identical, or similar, to parts used by Toyota plants abroad and in the United States to manufacture Toyota vehicles, Genuine Toyota Parts manufactured for use and/or sale as replacement parts in the United States have material differences from those manufactured for use and/or sale outside the United States and are packaged and shipped in accordance with certain guidelines and practices.

31.     For example, warranties provided by Toyota USA for Genuine Toyota Parts sold in the United States differ from those sold elsewhere. So long as the conditions for warranty are met, Toyota USA's warranty will be honored at any of Toyota USA's more than 1200 Authorized Dealers and at limited other locations as approved by Toyota USA.

32.     Parts—even those bearing the Toyota name or bearing Toyota Marks—that are intended for sale or use *outside* of the United States and are not imported into the United States by Toyota USA, carry no manufacturer warranty whatsoever in the United States. In addition, any damage or failure of Genuine Toyota Parts caused by the installation or failure of any part designated for sale or use *outside* the United States is not covered by any Toyota warranty.

33.     Toyota USA has not authorized the sale or use of parts bearing the Toyota name or Toyota Marks—including those identified on packaging as "Genuine Toyota Parts"— that are manufactured for sale *outside* the United States to be sold for use or used on vehicles *within* the United States.

34.     Any part bearing the name Toyota or sold under any of the Toyota Marks that is not imported into the United States by Toyota USA and is not authorized for sale or

use in the United States is either counterfeit or a gray market good because of material differences that exist between it and a Genuine Toyota Part.

## DEFENDANTS' PRODUCTS, DEFENDANTS UNLAWFUL ACTS, AND HARM TO TOYOTA USA

35.     Commencing long after the registration of and Toyota USA's use of the Toyota Marks, and without consent, Defendants have and continue to actively and knowingly import, distribute, promote, and/or sell in the United States, replacement automotive parts under the Toyota Marks, which were not intended for sale or use in the United States, but rather were intended for sale elsewhere ("Defendants' Products").

36.     Defendants' Products have material differences from Genuine Toyota Parts.

37.     The Defendants' Products thus constitute unlawful gray market goods (hereinafter, "non-genuine Toyota parts").

38.     Despite demands from Toyota USA that they cease and desist, Defendants have imported, and, upon information and belief, continue to import into the United States parts that are gray market goods.

39.     For example, on or about July 7, 2020, Toyota USA unexpectedly received a pallet of Defendants' Products sold by one or more of the Defendants to an Authorized Dealer in Missouri. Upon information and belief, the shipping carrier was confused as to the proper source and destination of the Defendants' Products and, upon information and belief, mistakenly believed they were Genuine Toyota Parts designated for return to Toyota USA. As such, the shipping carrier delivered the Defendants' Products to a Toyota USA parts distribution center.

40.     Upon analyzing the Defendants' Products, Toyota USA found that the appearance and condition of the parts and the shipping packages were inconsistent with Toyota USA's shipping and packaging guidelines and practices. For example, the parts were wrapped in black shrink-wrap, certain shipping identification labels had been removed, heavy parts were packaged with light parts, boxes were opened and protective packaging materials were removed, there was no steel cage around the pallet, and the pallet itself was in poor condition.

41.     More specifically, below is a visual comparison of a shipment of Defendants' Products as delivered to the Toyota dealer with a shipment of Genuine Toyota Parts delivered to a Toyota dealer via authorized channels showing the differences in the way Defendants deliver the products and the way Toyota delivers Genuine Toyota Parts:

**Defendants' Products**          **Genuine Toyota Parts**




42.     Additionally, and by way of example, the photograph below shows how a Genuine Toyota Part is individually packaged by Toyota as compared to how a similar part

was packaged and shipped by the Defendants. For purposes of this Paragraph and the below photograph, the term "Applegate Part" is synonymous with "Defendants' Products." This photograph was taken by Toyota USA after it obtained and inspected the pallet of Defendants' Products referenced in Paragraph 39, *supra*.



43.  Defendants have used, and continue to use, the Toyota Marks in such a fashion as to intentionally create a false impression among the consuming public that their goods originate from Toyota USA or are sponsored, approved by, guaranteed by, warranted by, managed, and/or affiliated with Toyota USA and are Genuine Toyota Parts.

44.  In particular, Defendants have further confused the consuming public as to the nature and origin of Defendants' Products because they have advertised and marketed

such products as being covered by a "manufacturer warranty" and as being "Toyota Quality

Assured."

45.     For example, the following screenshot of a Toyota part sold by Defendant

Bluestone Auto Products on its Amazon page falsely indicates that it is a "genuine" Toyota

part, carries a "Manufacturer Warranty," and is "Toyota Quality Assured":



https://www.amazon.com/Toyota-23206-35101-Fuel-Mounting-Bracket/dp/B00KTJ81GC/ref=sr_1_26?m=A2JULDC2ZJ596B&qid=1646705585&refinements=p_4%3AGenuine+Toyota+Parts&s=merchant-items&sr=1-26

46.     Contrary to Defendants' representations, the products sold by Bluestone

Auto Products are *not* "Genuine Toyota Parts," are *not* covered by a "Manufacturer

Warranty," and Toyota does *not* assure their quality.

47.     Defendants are also importing, promoting, distributing, and selling non-

genuine Toyota parts to Authorized Dealers, and, upon information and belief, to

consumers directly, and representing the non-genuine Toyota parts as "Genuine Toyota

Parts," when in fact they are not.

48.     For example, Defendants are promoting, distributing, and selling non-genuine Toyota parts to Authorized Dealers and others knowing that the Authorized Dealers will sell and/or install the non-genuine Toyota parts in customers' vehicles even though those parts are not guaranteed to be equivalent to Genuine Toyota Parts and/or knowing that some or all customers of the Authorized Dealers will not be aware that Defendants' Products are not Genuine Toyota Parts, and/or are not covered by Toyota USA's express written warranty for Genuine Toyota Parts sold in the United States.

49.     Toyota USA is required in this state and in most other states to pay Authorized Dealers a statutorily mandated mark-up on all parts used and on all labor provided pursuant to the Authorized Dealer's performance of its warranty obligations. In compliance with such statutory mandates, Toyota USA reimburses Authorized Dealers at what are essentially retail prices for parts and retail labor rates for warranty repairs.

50.     Likewise, if a Genuine Toyota Part is used as a replacement part for a customer-pay repair (*i.e.*, a non-warrantable repair), and that Genuine Toyota Part is later replaced by an Authorized Dealer under Toyota USA's Genuine Toyota Part warranty, Toyota USA must reimburse the Authorized Dealer for the replacement part and the associated labor.

51.     Toyota USA is not required by statute or otherwise to provide warranty reimbursement to Authorized Dealers when those dealers use parts that are not Genuine Toyota Parts imported into the United States by Toyota USA. However, when products such as Defendants' Products are marketed and sold to Authorized Dealers as Genuine Toyota Parts, and such parts are then used in warranty repairs, Toyota USA has no reliable

and consistent way of determining this has occurred, and therefore is placed in a position of making, and upon information and belief has made, payment for parts and labor for which it has no obligation to pay.

52.     The invoice that accompanied the shipment of Defendants' Products referenced in paragraph 39 purports to provide a warranty ("Defendants' Warranty") and purports to guarantee that the warranty's scope and duration will be equal to, or greater than, the parts warranty for Genuine Toyota Parts.

53.     Upon information and belief, while employees of the Authorized Dealer might see the invoice, no end-user consumer (*e.g.*, vehicle owner) would ever see any document setting forth Defendants' Warranty.

54.     The invoice accompanying the Defendants' Products does not have any instructions or protocols to follow in order to make a warranty claim or seek reimbursement under Defendants' Warranty.

55.     Upon information and belief, even if an end-user consumer was made aware of Defendants' Warranty, there are no accessible websites or forms associated with the Defendants that can be used by consumers to make warranty claims or seek reimbursement under the Defendants' Warranty.

56.     Upon information and belief, few, if any, Authorized Dealers or end-user consumers have ever made a warranty claim to, or sought reimbursement from, any Defendants for the purchase of Defendants' Products.  Even if such warranty claims have ever been made, upon information and belief, such claims have been very few, and rarely, if ever, have been paid or otherwise honored by Defendants.

57.     Upon information and belief, warranty and reimbursement claims for Defendants' Products have been made to Toyota USA.

58.     In addition, upon information and belief, gray market suppliers such as Defendants do not follow practices, procedures or otherwise take necessary care to ensure that the parts they sell and represent as "Genuine Toyota Parts" are current, and not outdated or otherwise superseded.

59.     The Defendants' Products are not covered under Toyota USA's warranty, Toyota USA does not guarantee the quality and/or safety of the Defendants' Products and, thus, Defendants' Products have one or more material differences as compared to Genuine Toyota Parts meant for sale and use in the United States.

60.     Upon information and belief, Defendants are promoting, distributing, and selling non-genuine Toyota parts in the United States via various e-commerce channels and directly to other parts supply outlets.

61.     By selling the non-genuine Toyota parts in the United States without authorization, Defendants have taken away certain of Toyota USA's ability to control the quality of their products and warranties and are creating confusion as to the origin of Defendants' Products.

62.     Defendants are intentionally and willfully importing, purchasing, promoting, distributing, offering for sale, and/or selling in the United States, without authorization, non-genuine Toyota parts to unfairly and fraudulently compete with Toyota USA, and to benefit from the valuable and favorable reputation and goodwill associated with the Toyota name and Toyota Marks.

63. Defendants have used and, unless ordered to stop, will continue to use, the name Toyota and the Toyota Marks in such a fashion as to intentionally create a false impression among the consuming public that Defendants' Products originate from Toyota USA or are sponsored, approved by, guaranteed by, and/or affiliated with Toyota USA, and to mispresent the origin and quality of and warranties for Defendants' Products.

64. Defendants, by and through the foregoing acts, have intentionally created and are likely to continue creating confusion and mistake among the public, customers, prospective customers, creditors, suppliers, and/or others to deceive them as to, *inter alia*, (1) the affiliation, connection, and association of Defendants with Toyota USA; (ii) the origin, sponsorship, or approval of Defendants' goods or commercial activities by Toyota USA; and (iii) the nature, characteristics, qualities, and warranties associated with Defendants' Products, goods, services, or commercial activities, all of which are for the purpose of enhancing the commercial value of, or selling or soliciting sales of, Defendants' Products.

65. By reason of the foregoing, Toyota USA has suffered and will continue to suffer irreparable harm to its property, business, reputation, and goodwill, and has suffered and will continue to suffer dilution of the distinctive quality of the Toyota Marks.

66. It would be impossible to determine the amount of monetary damage that has been done to Toyota USA by Defendants' actions. However, the profits that have been wrongfully obtained and retained by Defendants through the foregoing acts can be specifically determined and is the compensation being sought by Toyota USA for Defendants' unlawful actions.

67.     The acts of the Defendants alleged herein were knowing, intentional, willful, and extraordinary.

68.     An award of Defendants' profits, which is Toyota USA's remedy at law, is inadequate to fully compensate Toyota USA for the injuries caused by Defendants. Defendants are continuing the foregoing activities and, unless enjoined, will continue to do so, all to Toyota USA's irreparable damage and will require a multiplicity of judicial proceedings.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement, 15 U.S.C. § 1125(a))**

69.     Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

70.     This is a claim for trademark infringement under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

71.     Defendants' use and threatened continued use of marks that are identical or nearly identical to the Toyota Marks and tradenames infringes upon Toyota USA's rights in the Toyota Marks in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

72.     Defendants' use of the Toyota Marks is likely to cause confusion, or to cause mistake, or to deceive in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

73.     As a direct and proximate result of Defendants' illegal activities, Toyota USA has been irreparably harmed and seeks a disgorgement of Defendants' profits.

74.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA. Toyota USA has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### (False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))

75.     Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

76.     This count arises under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

77.     Defendants' use and threatened continued use of names and marks that are identical or nearly identical to the Toyota Marks constitutes a false designation of origin and a false description and representation of Defendants' business and products.

78.     Defendants' acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Toyota USA, or as to the origin, sponsorship or approval of Defendants' goods or commercial activities by Toyota USA.

79.     Defendants' activities violate Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

80.     As a direct and proximate result of Defendants' illegal activities, Toyota USA has been irreparably harmed and seeks a disgorgement of Defendants' profits.

81.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA. Toyota USA has no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Trademark Dilution, 15 U.S.C. § 1125(c))

82.     Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

83.     This count arises under Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

84.     Prior to the acts of Defendants alleged herein, the Toyota Marks have become famous.

85.     Defendants' use and threatened continued use of names or marks that are identical or nearly identical to the Toyota Marks causes dilution of the distinctive quality of the Toyota Marks.

86.     Defendants' activities are in violation of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

87.     As a direct and proximate result of Defendants' illegal activities, Toyota USA has been irreparably harmed and seeks a disgorgement of Defendants' profits.

88.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA. Toyota USA has no adequate remedy at law.

### FOURTH CAUSE OF ACTION
### (False Advertising, 15 U.S.C. § 1125 (a)(1)(B))

89.     Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

90.     Defendants have falsely advertised the Defendants' Products by advertising to the consuming public that they are Genuine Toyota Parts, are backed by a "Manufacturer Warranty", and have their quality "assured" by Toyota, all in violation of Section 43 of the Lanham Act.

91.     Defendants' false statements were, and are, made in a commercial advertisement about the Defendants' Products.

92.     Defendants' false statements actually deceive or have the tendency to deceive a substantial segment of the consuming public.

93.     Defendants' deception is material in that it is likely to influence the consumers' decisions whether to purchase Defendants' Products or to purchase Genuine Toyota Parts.

94.     Defendants' false statements affect interstate commerce.

95.     As a direct and proximate result of Defendants' illegal false advertising, Toyota USA has been irreparably harmed and seeks a disgorgement of Defendants' profits.

96.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA. Toyota USA has no adequate remedy at law.

### FIFTH CAUSE OF ACTION
**(Common Law Trademark Infringement)**

97.     Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

98.     Defendants' acts alleged herein and specifically, without limitation, Defendants' use of the Toyota Marks, infringe Toyota USA's trademark rights in the Toyota Marks, in violation of the common law.

99.     As a direct and proximate result of Defendants' illegal activities, Toyota USA has been irreparably harmed and seeks a disgorgement of Defendants' profits.

100.     Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA and will continue to damage Toyota USA and deceive the public unless enjoined by this Court. Toyota USA has no adequate remedy at law in that the amount of their damage is difficult to ascertain with specificity.

## SIXTH CAUSE OF ACTION
### (Minn. Stat. §§ 333.285 and 333.29)

101.    Toyota USA hereby re-alleges and incorporates the allegations set forth in the foregoing Paragraphs as if repeated verbatim herein.

102.    Toyota USA further alleges that Defendants have violated Minnesota dilution law, Minn. Stat. § 333.285.

103.    The Toyota Marks have become distinctive and famous because of many years of statement and interest and use and promotion of the mark by Toyota USA.

104.    Defendants' use of the Toyota Marks occurred many years after the Toyota Marks became famous.

105.    Defendants' unauthorized use of the Toyota Marks in the sale, advertising, and promotion of its goods dilutes the distinctiveness, strength, and value of the Toyota Marks.

106.    Defendants' unauthorized use of the Toyota Marks, as alleged herein, constitutes a willful intent to cause dilution of the Toyota Marks in violation of Minn. Stat. § 333.285.

107.    Defendants' conduct has caused and will continue to cause immediate and irreparable injury to Toyota USA and will continue to damage Toyota USA and deceive the public unless enjoined by this Court. Toyota USA has no adequate remedy at law in that the amount of its damage is difficult to ascertain with specificity.

108.    By reason of the foregoing, Toyota USA asserts a claim against Defendants for injunctive relief and for disgorgement of Defendants' profits, treble Defendants' profits, costs of suit, and reasonable attorneys' fees, pursuant to Minn. Stat. § 333.29.

WHEREFORE, Toyota USA prays for an order as follows:

a)    declare, adjudge, and decree that Defendants' use of a copy, reproduction, counterfeit, simulation, or colorable imitation of the Toyota Marks in connection with sales of Defendants' Products constitutes registered trademark infringement and counterfeiting, federal trademark dilution, and/or false designation of origin;

b)    permanently enjoin and restrain Defendants, their officers, directors, servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with Defendants from:

    i.    misrepresenting in any way the source of origin or the nature or quality of Defendants' Products;

    ii.    making, manufacturing, importing, using, distributing, shipping, licensing, selling, developing, displaying, delivering, advertising and/or otherwise marketing or disposing of Defendants' Products;

    iii.    disposing of, destroying, moving, relocating, or transferring any and all of Defendant's Products, as well as packaging therefor and other items including advertising, promotion, drawings, transfers, brochures, catalogs, stationery, business forms, business cards, labels, tags, stickers, etc. relating to and/or used with Defendants' Products;

    iv.    disposing of, destroying, moving, relocating or transferring any means for making labels, tags, stickers, packages, discs or other items relating to Defendants' Products or markings, including art work,

screens, printing plates, dies, matrices, decals, and any other equipment; and

    v.    disposing of, destroying, moving, relocating, or transferring any documents pertaining to the importation, sale, receipt, promotion, advertising, distribution, and/or shipment of Defendant's Products;

c)    order Defendants to recall any and all of Defendants' Products;

d)    order each Defendant to file with this Court and serve upon Toyota USA within 30 days of being served with this Court's injunction issued in this action, a written report signed by each such Defendant under oath, setting forth in detail the manner in which each such Defendant has complied with the injunction;

e)    provide Toyota USA with expedited discovery;

f)    permanently enjoin Defendants from further conduct which infringes, dilutes, or otherwise creates confusion with, or affects the quality of, the Toyota Marks;

g)    award Toyota USA compensatory damages in the form of disgorgement of Defendants' funds from all profits obtained from their sales of all Defendants' Products;

h)    award Toyota USA treble damages in the form of disgorgement of three times Defendants' all profits obtained from their sales of all Defendants' Products;

i)      award Toyota USA its costs, disbursements, and attorneys' fees incurred in

        bringing this action;

j)      award Toyota USA prejudgment interest; and

k)      award Toyota USA such other and further relief as this Court may deem just

        and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands trial by jury in this action on any issue triable of right by a jury.

Dated: June 28, 2022.

*s/John D. Sear*
John D. Sear (MN Atty. ID # 222252)
NELSON MULLINS RILEY
& SCARBOROUGH LLP
1600 Utica Avenue South, Suite 750
St. Louis Park, MN  55416
Tel: 612-464-7637
Email: john.sear@nelsonmullins.com

*Attorney for Plaintiff Toyota Motor
Sales, U.S.A., Inc.*