UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | Case No. 22-cv-1681 (KMM/JFD) |
| Plaintiff, | |
| v. | |
| Allen Interchange LLC, et al., | **ORDER** |
| Defendant, | |
| Allen Interchange LLC, | |
| Counter Claimant, | |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., | |
| Counter Defendant. | |

Toyota Motor Sales, U.S.A., Inc. ("Toyota USA") brought this trademark action under the Lanham Act and Minnesota state law against Allen Interchange, LLC ("Allen Interchange"). Toyota USA alleges that Allen Interchange 1) sold Toyota-branded parts that are materially different from Genuine Toyota Parts[1] sold by Toyota USA in the United States,[2] and 2) falsely advertised the Toyota-branded parts as being backed by a

---

[1] Toyota USA uses the term "Genuine Toyota Parts" at times in this litigation to distinguish the parts it distributes from those Toyota-branded parts sold by Allen Interchange. At times, in the interest of clarity, the Court adopts this nomenclature, particularly when summarizing the Complaint. However, the Court's use of the term, including its capitalization convention, is not intended to endorse the meaning Toyota USA perhaps intends, a question which will be answered another day.

[2] Am. Compl., ¶¶ 36–38, ECF No. 5.

1

manufacturer's warranty.[3] Allen Interchange moves for a partial dismissal of Toyota USA's claims, and requests that the Court require joinder of Toyota Motor Corporation ("Toyota Japan"). [Allen Mot. to Dismiss/Joinder, ECF No. 41.] For the reasons that follow, the Court grants Allen Interchange's motion in part and dismisses counts 3, 5, and 6 without prejudice, and denies Allen Interchange's motion for joinder of Toyota Japan.

I.  Background

A. The Parties

Toyota USA is the exclusive authorized importer of Toyota-branded parts for sale in the continental United States, including Alaska. [Am. Compl. ¶¶ 3, 17.] Toyota USA has a license to distribute Toyota-branded parts in the United States in association with the trademarks and trade names of Toyota Japan. [*Id.* ¶ 3.] Toyota USA is not an exclusive licensee of the Toyota trademarks that belong to Toyota Japan; however, it has been the exclusive authorized importer of Toyota vehicles and Genuine Toyota Parts into the United States since 1957.[4] [*Id.* ¶ 17.]

Allen Interchange is a limited liability company organized under the laws of the State of Minnesota. [*Id.* ¶ 4.] Allen Interchange buys Toyota parts injected into the stream of commerce by Toyota through an initial sale outside the United States and resells them to Toyota dealers and others in the United States at lower prices. [*Id.* ¶¶ 36–38.]

---

[3] *Id.* ¶¶ 46, 91.
[4] According to the Amended Complaint, "Genuine Toyota Parts" include Toyota-brand automotive parts and accessories. [Am. Compl. ¶ 17.]

2

### B. Manufacture, Use, and Sale of Genuine Toyota Parts

Authorized suppliers around the world manufacture genuine Toyota parts according to Toyota Japan's designs, specifications, and quality standards. [Am. Compl. ¶ 25.] Toyota USA grants authorized Toyota dealers the rights to sell Genuine Toyota Parts to customers in the United States. [*Id.* ¶ 26.] Toyota USA sells these Genuine Toyota Parts to the dealers for use as replacement parts in Toyota-branded vehicles. [*Id.* ¶ 27.] Toyota USA asserts that the replacement parts intended for use in the United States have material differences from those manufactured elsewhere. [*Id.* ¶ 31.] Toyota USA has specific guidelines and practices related to the packaging and shipping of Genuine Toyota Parts both into and within the United States. [*Id.* ¶ 30.] Toyota USA claims that it has not authorized the sale or use of parts bearing the Toyota name or marks that are manufactured for sale outside of the United States to be sold for use or used on vehicles within the United States. [*Id.* ¶ 34.]

### C. Allen Interchange's Alleged Conduct

Toyota USA asserts that Allen Interchange is a gray market parts supplier[5], importing and selling Toyota-branded vehicle replacement parts in the United States, even though the parts are intended for sale or use outside of the United States. [Am. Compl. ¶¶

---

[5] Generally, "[g]ray market goods are goods manufactured under authorization from the trademark holder, legally purchased outside the United States from authorized distributors, and "imported by persons other than the trademark holder and without the markholder's permission." *Abbott Labs. et al. v. Adelphia Supply USA et al.*, 15-CV-5826 (CBA) (LB), 17-CV-6002 (CBA) (LB), 2019 WL 5696148, at *4 (S.D.N.Y. Sept. 30, 2019) (quoting *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 241 (2nd Cir. 2009). Allen Interchange disputes that it is a gray-market vendor, and asserts that, even if it were, its business model does not violate any laws.

36–38.] Toyota USA asserts that the Toyota-branded parts sold by Allen Interchange have material differences from the Toyota parts manufactured, imported, and/or distributed by Toyota USA. [*Id.*] Additionally, Toyota USA alleges that Allen Interchange has falsely advertised the Toyota-branded parts it sells as being backed by a manufacturer's warranty. [*Id.* ¶¶ 46, 91.]

### D. Claims

Toyota USA brought various causes of actions under the Lanham Act against Allen Interchange and others: 1) Trademark Infringement under 15 U.S.C. § 1125(a); 2) False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a); 3) Trademark Dilution under 15 U.S.C. § 1125(c); 4) False Advertising under 15 U.S.C. § 1125(a)(1)(B); 5) Common Law Trademark Infringement; and 6) Trademark Dilution under Minn. Stat. §§ 333.285 and 333.29. [Am. Compl. ¶16–20.]

Toyota USA states that it "is the licensee of the trademarks owned by [Toyota Japan]—used in the United States in association or connection with the promotion, distribution, sale, and providing of Toyota products and services—including Genuine Toyota Parts, including but not limited to" registered marks that Toyota USA lists. [*Id.* ¶ 18.] Toyota USA explains that Toyota Japan owns the marks and is the source of the "designs, specifications, and quality standards" for parts bearing the Toyota Marks. [*See id.* ¶ 25.] Regarding Toyota Japan's trademarks, the Amended Complaints states that Toyota USA

> has been granted a license to distribute Toyota-branded parts
> in the United States in association or in connection with the

4

> trademarks and tradenames, registered and unregistered, of Toyota Motor corporation, and has the right to enforce those rights and sublicense those rights to authorized Toyota Dealers, distributors, and others.

[*Id.* ¶ 3.]

## II.  Analysis

Allen Interchange moves to dismiss Toyota USA's statutory dilution claims (Counts 3 and 6) and its common law trademark infringement claim (Count 5), arguing that the statutes and common law explicitly require the "owner" of the trademark to bring suit, and Toyota USA is not the trademark owner. [Allen Mem. in Supp. 2, ECF No. 42.] For Toyota USA's remaining claims (Counts 1, 2, and 4), Allen Interchange alleges that Toyota Japan is a required party under the joinder provisions of Federal Rule of Civil Procedure 19, and argues that Toyota USA must either join Toyota Japan as a plaintiff or face dismissal. [*Id.*] For the reasons stated below, the Court grants the motion to dismiss, but denies the motion for joinder.

### A. Standing

Allen Interchange asserts that Toyota USA lacks standing to raise its federal and state statutory dilution claims, as well as its common law infringement claim. [*Id.*] Specifically, Allen argues that because Toyota USA is not the owner of the trademarks at issue, it cannot raise these causes of action. The Court agrees.

#### 1. A Word About "Standing"

At the outset, it is important to be clear about the precise nature of Allen Interchange's argument. The briefing from both sides describes the argument as a

challenge to standing, and suggests that it implicates the Court's jurisdiction under Article III. For instance, Allen answers Toyota USA's argument that the Motion to Dismiss is procedurally improper by explaining that it is "presenting a subject matter jurisdiction" defense to the Counts 3, 5 and 6. [Allen Reply 3, ECF 50.] Moreover, the caselaw cited by both parties describes the issue as one of standing and, at times, jurisdiction. *See, e.g.*, *Prince of Peace Enters., Inc. v. Top Quality Food Mkt, LLC*, 760 F. Supp. 2d 384, 392–93 (S.D.N.Y. 2011) ("[A]s the beneficiary of a license agreement, and not of an assignment of ownership rights, POP lacks standing to bring its infringement claim."); *Quabang Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 159 (1st Cir. 1977) (explaining when an exclusive licensee qualifies as a registrant/owner so as to confer standing).

Arguments such as the ones raised by Allen Interchange do not actually go to Article III standing, nor to the fundamental question of whether this Court has subject-matter jurisdiction, as much as they consider whether a plaintiff invoking a statute is covered by its provisions. *See*, *e.g.*, *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012); *Kuklenski v. Medtronic USA, Inc.*, No. 22-cv-438 (ECT/JFD), 2022 WL 7105882, at *3 n.4 (D. Minn. Oct. 12, 2022). As the Court in *Miller* explained:

> When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing). Article III standing must be decided first by the court and presents a question of justiciability; if it is lacking, a federal court has no subject-matter jurisdiction over the claim. By contrast, statutory standing goes to the merits of the claim. The "issue of *statutory* standing … has nothing to do with whether there is case or controversy under Article III," and we are careful not to conflate the two.

688 F.3d at 934 (internal citations omitted) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998)). The *Miller* court went on to describe "statutory standing" as a question of "simply statutory interpretation: the question it asks is whether Congress…has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." 688 F.3d at 934 (quoting *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d. Cir. 2007)) (emphasis in original). While the *Miller* court's use of the term "statutory standing" is useful to differentiate it from Article III standing, it has the unfortunate effect of deepening confusion about when a challenge to a claim rests on jurisdictional grounds. *See Kuklenski*, 2022 WL 7105882, at *3 n.4 ("Statutory standing is *not* jurisdictional; it 'goes to the merits of the claim.' ... There is no question [plaintiff] has Article III standing. She alleges injuries caused by age discrimination that may be redressed by a damages award.") (emphasis in original).

  This distinction matters more in some disputes than in others. As a practical matter, its impact on this case is, at most, procedural. Because the Court ultimately agrees with Allen Interchange that Toyota USA cannot raise the three claims explored in this section as it is not the owner of the marks at issue, it dismisses the relevant counts. It would do so whether it determined that the plaintiff lacked Article III standing or that the plaintiff was simply not a party covered by the statute.

  Moreover, the Court observes that the lens of its review would be the same whether it treated Allen's argument as one of constitutional standing or one of "statutory standing" that challenges whether Toyota USA is covered by the statutes and common-law it seeks to invoke. In its opening memorandum, Allen Interchange noted that it was raising a facial

7

challenge to standing, not a factual one. [Allen Mem. in Supp. 5.] On a facial challenge, a court must "accept[] as true all facts alleged in the complaint" and "consider[] only the materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotations omitted). Although the Court instead treats this issue as a "statutory standing" claim raised through a motion for judgment on the pleadings, the applicable lens of review is the same. *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (explaining that a judgment on the pleadings under Federal Rule of Civil Procedure 12(c) requires the court to "accept as true all factual allegations set out in the complaint") (citation omitted). So as far as the merits of this issue are concerned, the Court's discussion of its framing does not alter the Court's analysis.[6]

In this case, however, this distinction does create a procedural question. As explored in the briefing, Allen Interchange first filed an Answer in this case [ECF No. 15] and then filed its Motion to Dismiss. [ECF 41.] Toyota argued that the Motion to Dismiss was untimely under Fed. R. Civ. P. 12(b). [Toyota Mem. in Opp'n 6, ECF No. 48.] Among other responses, Allen argued that it was raising a facial challenge to the court's jurisdiction under Rule 12(b)(1), which can be raised at any time. But because the Court disagrees that Allen's argument is properly characterized as a challenge to constitutional standing and

---

[6] Indeed, if the reframing of this issue impacted its merits or the applicable analytical framework in a meaningful way, the Court would have sought additional briefing. But because the outcome of the Motion is the same as to counts 3, 5, and 6 regardless of whether the issue is "constitutional standing," "statutory standing," or something else, such submissions are not necessary.

8

therefore subject matter jurisdiction, it is not correct that it can be raised at any time. However, for two reasons, the Court declines Toyota USA's invitation to deny Allen Interchange's motion as untimely.

First, while the Court disagrees that the issue raised by Allen Interchange is one of constitutional standing and therefore jurisdiction, Allen is by no means alone in describing the argument in such terms. Indeed, the caselaw exploring the issue in this case uses similar terms to describe a challenge to whether a particular party has a sufficient stake in the trademark to bring the claim. *See Prince of Peace Enters., Inc.*, 760 F. Supp. 2d at 392–93 (explaining that the owner of the Mark at issue lacked standing under [ ] Section 43(c) of the Lanham Act). And, as the decisions of the courts in *Miller* and *Kuklenski* demonstrate, the distinction is unclear in many other statutory contexts as well. It would make little sense to fault Allen Interchange for following that line of authority and filing what it believed to be a timely motion, deny the motion at this stage, and then dismiss the claims for the very same reason at the summary judgment stage.

Second, consideration of Allen's motion is still permitted despite the issue being non-jurisdictional. Courts do not interpret Rule 12(b)'s timing provision as strictly as Toyota USA suggests when, as here, the defense of failure to state a claim was raised in a previously filed answer and the defendant would be permitted to make identical arguments under Rule 12(c). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[S]ince Rule 12(h)(2) provides that a defense of failure to state a claim ... may be advanced in a motion for judgment on the pleadings under Rule 12(c), we will treat the

City's motion as if it had been styled a 12(c) motion.") (cleaned up); 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.*, Timing of Rule 12(b) Motions § 1361 & n.7 (3d ed. Apr. 2023 Update) (Westlaw). Given this reality, the Court will not treat Allen Interchange's Motion as untimely.

### 2. Statutory Dilution Claims

The Court now turns to the merits of Allen Interchange's Motion to Dismiss. Allen argues that Toyota USA is unable to bring a federal dilution claim under the Lanham Act because Toyota USA is not the "owner" of the Toyota Marks.[7] [Allen Mem. in Supp. 6.] The Lanham Act provides that "[s]ubject to the principles of equity, the *owner* of a famous mark . . . shall be entitled to an injunction" to enjoin trademark dilution. Lanham Act § 43, 15 U.S.C. § 1125(c)(1) (emphasis added). Generally, courts have interpreted this text to mean that only an owner is entitled to bring a federal dilution claim. *Phyllis Schlafly Revocable Tr. v. Cori*, No. 4:16-cv-01631-JAR, 2022 WL 898760, at *5 (E.D. Mo. Mar. 28, 2022) ("Nothing in the Lanham Act suggests that 'owner' in § 1125(c)(1) includes by definition anything other than the actual owner of the famous mark.") (citation omitted); *Prince of Peace Enters., Inc.*, 760 F. Supp. 2d at 392–93 ("As it is not the owner of the Mark, POP lacks standing under . . . Section 43(c) of the Lanham Act.").

Toyota USA argues that this seemingly clear rule has exceptions, noting that some courts have held that an exclusive licensee has standing to bring a dilution claim. *See, e.g.*, *Quabang Rubber Co.*, 567 F.2d at 159 (highlighting instances when an exclusive licensee

---

[7] The applicable code section for Section 43 of the Lanham Act is 15 U.S.C. § 1125(c).

qualifies as a registrant/owner so as to confer standing); *Ultrapure Sys., Inc. v. Ham-Let Grp.*, 921 F. Supp. 659, 665–66 (N.D. Cal. 1996) (concluding that the grant to the licensee was complete and conferred standing under the Lanham Act). This argument suffers from two flaws.

First, Toyota USA does not allege in the Amended Complaint that it is the exclusive licensee of the Toyota Marks, and in fact acknowledges in its briefing that it is not. Instead it argues that it is an exclusive authorized importer and distributor, which it suggests is close enough for this purpose. [Toyota Mem. in Opp'n 16.] The distinction is important because an "exclusive licensee" is the sole entity with an interest in a trademark, while an "exclusive importer and distributor" could be one of multiple entities with such an interest.

More critically, even if Toyota USA could be considered an exclusive licensee for some purposes, the cases relied upon by Toyota are not instructive because they address trademark infringement claims under 1125(a), rather than dilution claims under 1125(c). This distinction is important because § 1125(c) explicitly uses the term "owner" when identifying who may bring suit, whereas § 1125(a) uses the broader language of "any person." 15 U.S.C. § 1125(c); 15 U.S.C. § 1125(a). *See, e.g.*, *Quabaug Rubber Co.*, 567 F.2d at 160 ("[O]ne who may suffer adverse consequences from a violation of section 1125(a) has standing to sue regardless of whether he is the registrant of a trademark.") (citations omitted); *Ultrapure Sys., Inc.*, 921 F. Supp. at 665–66 (analyzing the standing question under 15 U.S.C. § 1114).

Toyota USA also points to *Ferrero U.S.A. v. Ozak Trading, Inc.* to support its argument that it has standing to assert its dilution and common law trademark infringement

11

claims as the exclusive authorized importer and distributor of Toyota-branded parts in the United States. 753 F. Supp. 1240, 1245 (D.N.J. 1991) (finding that an exclusive distributor had standing to assert trademark infringement claims where plaintiff spent substantial time and effort developing its market position based on trademarks owned by an affiliated corporation), *aff'd*, 935 F.2d 1281 (3d Cir. 1991), *and rev'd on other grounds*, 952 F.2d 44 (3d Cir. 1991). But despite the relevant entity in *Ferrero* being a closer match to Toyota USA's role in this case as the plaintiff there was an exclusive distributor, the case suffers from the same infirmity as those referenced above -- Toyota USA's present claim is a dilution claim under § 1125(c), while the claim in *Ferrero* arose under other provisions of the Lanham Act.[8] *Id.* at 1241. Toyota USA does not cite, and this Court's own research has not identified, other cases suggesting that exclusive distributors have statutory standing in dilution cases.[9] For these reasons, the court dismisses Toyota USA's federal dilution claim for lack of standing.

Toyota USA's state dilution claim fails for similar reasons. Minnesota's statutory trademark dilution provisions states that "[t]he owner of a mark that is famous in this state may" seek an injunction in the event of trademark dilution. Minn. Stat. § 333.285(a). Toyota USA points to no authority for the idea that "owner" in the state context is to be

---

[8] Toyota argues that *Ferrero* stands for the broader proposition that exclusive distributors are empowered to assert "any and all" trademark claims. But because the *Fererro* court addresses neither a dilution claim nor the plain language of § 1125(c), its holding cannot be stretched so far.

[9] Toyota USA cites only one case involving a dilution claim, *Toyota Motor Sales, U.S.A., Inc v. Profile Cocktail Lounge, Inc.*, No. 99 C 5377, 2001 WL 123787 (N.D. Ill. Feb. 13, 2001). However, that case does not explore the issue of standing at all, and is therefore of little persuasive value on the question presented here.

interpreted differently from or more broadly than the use of the term in § 1125(c), and the Court is aware of none.

### 3. Common Law Trademark Infringement Claim

Allen Interchange similarly argues that Toyota USA lacks standing to bring its common law trademark infringement claim because it is not the owner of the marks. [Allen Mem. in Supp. 2.] Lanham Act protections extend to registered trademarks as well as common law trademarks. *Moon Seed LLC v. Weidner*, 604 F. Supp. 3d 780, 789 (S.D. Iowa 2022). "[A] common-law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996). To prevail on a common law trademark claim, a plaintiff must show that: (1) it has a protectable mark, (2) it has priority use of that mark, and (3) defendant's subsequent use of that mark is likely to cause confusion. *Northland Ins. Cos. v. Blaylock*, 115 F. Supp. 2d 1108, 1117 (D. Minn. 2000). However, "[o]nly the owner of the trademark has standing to seek relief for common law trademark infringement." *Hot Stuff Foods, LLC v. Mean Gene's Enters., Inc.*, 468 F. Supp. 2d 1078, 1094 (D.S.D. 2006) (citing *Quabang Rubber Co.,* 567 F. 2d at 160). The Court finds that these cases, and those cited by Allen Interchange [Allen Mem. in Supp. 7–8], are persuasive.

Toyota USA cites *Bus. Trends Analysts v. Freedonia Grp., Inc.*, to support its position that it need not be the owner of the mark to bring a common law claim. 650 F. Supp. 1452, 1457–58 (S.D.N.Y. 1987). In *Business Trends*, the court stated, "[w]here standing is not limited by statute or by contract with the trademark owner, … it is sufficient

13

that a plaintiff own an exclusive distributorship for a product sold under the trademark." *Id.* at 1458. However, not only is Toyota USA's relationship to the marks at issue less exclusive than the plaintiff in *Business Trends*, but the marks in this case are registered, not unregistered common law marks.[10]

For these reasons, the Court grants Allen Interchange's Motion to Dismiss Counts 3, 5, and 6 of Toyota USA's Amended Complaint.

### B. Allen Interchange's Motion for Joinder

Allen Interchange asserts that Toyota Japan is a necessary party for Counts 1, 2, and 4 of Toyota USA's Amended Complaint, and requests that the Court either require Toyota USA to join Toyota Japan to these counts or dismiss them. [Allen Mem. in Supp. 2.] For the reasons stated below, the Court finds that Toyota Japan is not a necessary party for Counts 1, 2, and 4, and denies Allen Interchange's Motion for Joinder.

### 1. Timeliness

As explored above, the law does not require dismissal of a motion like this one simply because it was filed after an answer when the defense at issue was cited in the answer.[11] *Bellasio Foods, Inc. v. Prodo Pak Corp.*, No. 07-CV-4520 (PJS/JJG), 2008 WL 4867352, at *3 n.6 ("[F]ederal courts have allowed untimely motions if the defense has been previously included in the answer.") (quoting 5C Charles Alan Wright et al., Federal

---

[10] Toyota USA indicated it wishes to amend the Complaint to make clear that its common law claims concern unfair competition rather than infringement, and such a revision might indeed address the standing issue. However, a request to amend the complaint to clarify the claim is not yet before this Court.

[11] Section A1, *supra*, at 8–10.

Practice and Procedure § 1361 at 93–94 (3d ed. 2004)). Here, Allen Interchange raised the defense of failure to join all necessary parties in its answer, ensuring that it is a surprise to no one. [Answer ¶¶ 80–81.] Accordingly, the Court finds it is appropriate to rule on Allen Interchange's Motion for Joinder.

### 2. Merits

Allen Interchange argues that Toyota Japan is a necessary party for Counts 1, 2, and 4 of Toyota USA's Amended Complaint, and asks the Court to require Toyota USA to join Toyota Japan to these counts. [Allen Mem. in Supp. 2.] The Court must first decide whether Toyota Japan is subject to compulsory joinder under Rule 19(a). *See St. James v. New Prague Area Cmty. Ctr.*, No. 06-cv-1472 (JNE/JJG), 2006 WL 2069197, at *1 (D. Minn. July 26, 2006). If so, and the joinder of Toyota Japan is feasible, it will require Toyota USA to join Toyota Japan to this suit. *Id.* (citing *Ranger Transp. v. Wal-Mart Stores*, 903 F.2d 1185, 1187 (8th Cir. 1990) (per curiam).

According to Rule 19(a)(1)(B), joinder is required when the person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" result in either of two outcomes:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii). And the Court must join required parties if feasible. Fed. R. Civ. P. 19(a)(2) ("If a person has not been joined as required, the court must order

15

that the person be made a party.") When determining whether a party must be joined, "the critical inquiry is whether the party will lose the opportunity to vindicate those rights in a future proceeding." *St. James*, 2006 WL 2069197, at *2 (citing *LLC Corp. v. Pension Benefit Guarantee Corp.*, 703 F.2d 301, 305 (8th Cir. 1983); *see also* 7 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1604 (3d ed. 2004).

### *Ability to Protect Interest*

Allen Interchange suggests that "a finding against [Toyota USA] on its claims could impact Toyota-Japan's interests adversely," and cites authority for its position that, as the owner of the marks at issue, Toyota Japan must be at the table. [Allen Mem. in Supp. 12.] *See, e.g.*, *JTG of Nashville, Inc. v. Rhythm Brand, Inc.*, 693 F. Supp. 623, 624 (M.D. Tenn. 1988) (joining trademark owner where both trademark infringement and unfair competition claims were at issue); *Lion Petroleum of Mo., Inc. v. Millennium Super Stop, LLC*, 467 F. Supp. 2d 953, 956–57 (E.D. Mo. 2006) ("Generally, in suits for patent and trademark infringement, the owner of the patent or trademark is a necessary party.") (citing 7 Wright, Miller & Kane § 1604). But in those cases, trademark infringement and the owner's rights in their trademark were directly at issue. They do not support joinder in this case.

Toyota USA's position is that although the Amended Complaint at times uses the term "trademark infringement," Counts 1, 2, and 4 in reality allege unfair competition under Section 43(a). [Toyota Mem. in Opp'n 8.] This distinction matters. The decisions upon which Allen Interchange relies for its assertion that Toyota Japan must be involved in the case point to the indispensability of trademark owners in trademark infringement actions—not unfair competition actions under § 1125(a). *See St. James*, 2006 WL

2069197, at *2 ("It is well established, in suits for patent and trademark infringement, that the owner of the patent or trademark is subject to compulsory joinder."); *Int'l Imps., Inc. v. Int'l Spirits & Wines, LLC*, No. 10-61856-CIV, 2011 WL 7807548, at *7–8 (S.D. Fla. July 26, 2011) (finding that a disputed co-owner of the trademark was a necessary party where the case could result in the invalidation of the trademark); *Jaguar Cars Ltd. v. Mfrs. Des Montres Jaguar, S.A.*, 196 F.R.D. 306, 308–09 (E.D. Mich. 2000) (finding that trademark owner was a necessary party where its registrations were directly challenged and at risk of cancellation by the lawsuit).

This line of authority makes sense. There are several practical reasons why a court would join a trademark owner as a necessary party in a trademark action: (1) the trademark owner has an obvious interest in protecting its rights in the mark; (2) the trademark owner should not have to risk the possibility of estoppel if its mark is declared invalid; and (3) the defendant could be subject to multiple suits if the trademark owner wasn't joined and decided to bring another lawsuit in the future. *JTG of Nashville, Inc.*, 693 F. Supp. at 626–27. But most of these concerns are simply not implicated by the unfair competition that Toyota USA is raising under § 1125(a). There is no risk in this case that the mark would be declared invalid. And there is no indication from the pleadings that there is any dispute about the ownership, strength, or validity of the Toyota Marks.

Allen Interchange has not cited any cases squarely supporting its argument that a trademark owner is a necessary party in unfair competition claims under Section 1125(a),

17

and the Court has located none.[12] Instead, it appears that at least one court has rejected such claims. *See, e.g.*, *Hotaling & Co., LLC v. Berry Sols., Inc.*, No. 20-cv-18718 (KSH)(CLW), 2021 WL 3783260, at *6 (D.N.J. Oct. 19, 2021) (rejecting defendant's motion to join a trademark owner as a necessary party for unfair competition claim). Although Allen does an excellent job of demonstrating why the standing cases upon which Toyota USA relied to oppose the joinder motion are not relevant, it doesn't point to cases that actually mandate joinder in a case of unfair competition allegations when those claims are not paired with direct infringement claims. And as the proponent of joinder, Allen bears the burden of demonstrating that it is required. *EEOC v. Apria Healthcare Group, Inc.*, 222 F.R.D. 608, 609–10 (E.D. Mo. 2004) (explaining that the party moving for dismissal under Rule 12(b)(7) has the burden of showing that the absent party should be joined under Rule 19). In sum, the concerns set forth at Rule 19(a)(1)(B)(i) are not meaningfully implicated by the claims at issue.[13]

---

[12] Both sides ask the Court to make inferences from the way litigation in this arena has routinely proceeded in the past. Allen identifies instances in which the trademark owner, even an overseas entity, was a party to the litigation, and asks the Court to assume that they were plaintiffs because it is required. And Toyota USA points to cases in which litigation proceeded without parent entity that owns the mark, and asks the Court to infer that is because doing so it perfectly legal. However, the Court finds it minimally instructive whether a parent company chose to join litigation in a particular case for whatever reason, and similarly attaches little weight to a defendant's decision not to seek joinder in a particular case where the parent company that owns the mark is absent. Instead, the Court looked for authority expressly addressing when joinder *is required* in this context, and found very little.

[13] To be clear, the Court's ruling on this is premised in part of Toyota USA's repeated assertions that claims 1, 2, and 4 are actually unfair competition claims and not traditional infringement claims. If that narrowing of the claims is abandoned down the road in this litigation, the Court would revisit the necessity of joining Toyota Japan.

*Substantial risk of incurring multiple or inconsistent obligations*

Allen Interchange also argues that, if joinder is not ordered, it could face the risk of a subsequent suit by Toyota Japan or another licensee situated similarly to Toyota USA, in the United States. [Allen Mem. in Supp. 11.] Allen Interchange cites no authority in support of this argument, and given the nature of Toyota USA's claims such a scenario seems quite unlikely. Because Toyota USA is the exclusive authorized importer and distributor of Toyota vehicles and Genuine Toyota Parts in the United States, it is unclear who would be positioned or motivated to bring a similar case against Allen Interchange in the future. And the rule requires a "substantial risk" of serial litigation, not the speculative risk suggested here.

For the reasons explained above, the Court denies Allen Interchange's motion for joinder.[14]

### III.   Order

Based on the foregoing discussion, **IT IS HEREBY ORDERED that** Allen Interchange's Motion to Dismiss Counts 3, 5, and 6 [ECF No. 41], is **GRANTED** and Counts 3, 5, and 6 claims are dismissed without prejudice for lack of subject matter jurisdiction. Allen Interchange's Motion for Joinder with regard to Counts 1, 2, and 4 is **DENIED**.

Date: August 14, 2023

---

[14] Having found that Allen Interchange did not show that joinder of Toyota Japan is required under Rule 19(a)(1), the motion is denied without reaching the Rule 19(b) inquiry. *Inst. for the Int'l Educ. of Students v. Qian Chen*, 380 F. Supp. 3d 801, 811 (S.D. Ind. 2019).

          *s/Katherine Menendez*
          Katherine Menendez
          United States District Judge