UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | Case No. 22-CV-1681 (KMM/JFD)] |
| Plaintiff, | |
| v. | |
| Allen Interchange LLC, et al., | |
| Defendant. | **PROTECTIVE ORDER** |
| Allen Interchange LLC, | |
| Counter Claimant, | |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., | |
| Counter Defendant. | |

Plaintiff and Defendant[1] largely agreed on the terms of a protective order in this case but were unable to present the Court with a proposed order that they fully agreed on. Now before the Court are competing protective orders, one urged on the Court by Plaintiff (Dkt. No. 84) and one by Defendant (Dkt. No. 77). The Court heard oral argument on the motions to enter these protective orders under Fed. R. Civ. P. 26(c)(1)(G) on November 9, 2023. (Hr'g Mins., Dkt. No. 96.) Neil C. Jones and John Sear, Esqs., appeared for Plaintiff

---

[1] Because Defendant has brought counterclaims, the Plaintiff is also a counter defendant while Defendant is also a counter claimant. For simplicity, the Court uses just "Plaintiff" and "Defendant" in this Order.

1

Toyota Motor Sales, U.S.A., Inc., and James Long and Jeya Paul, Esqs. appeared for Defendant Allen Interchange, LLC, and others.

To their credit, the parties have agreed on most of the terms of a protective order. They disagree on (1) whether an in-house attorney at Toyota Motor North America (the parent company of Plaintiff, which provides Plaintiff with in-house legal services and other support) should be able to see discovery material designated "Attorneys' Eyes Only" by Defendant and (2) who should be allowed to see documents designated as "Confidential" or "Attorneys' Eyes Only" under the protective order's provisions for retained experts and consultants. (*See* Joint Rep. on Proposed Protective Order, Ex. A, Dkt. No. 67-1; Declaration of Laura O'Rourke ¶ 3, Dkt. No. 87.)

At the conclusion of the November 9 hearing, the Court ruled from the bench and denied the Defendant's request to bar the sharing of confidential documents with experts or consultants who work for a corporate affiliate of any party or for an entity that directly competes with any party or is a customer of any party or is a direct seller to any party. The Court also ruled that Attorneys' Eyes Only material could not be shared with an identified in-house lawyer (Ms. O'Rourke) for Toyota Motor North America, or an identified paraprofessional who worked with Ms. O'Rourke (Ms. Rojas), but stated that the Court would issue a short written order on this dispute. This is that order.

    **I.  BACKGROUND AND OBSERVATIONS**

As a preliminary observation, this lawsuit is between Toyota and the *specific Defendants Toyota has sued in this case*, not any other companies. The parties to this lawsuit will resolve the dispute between them by trial, or at summary judgment, or through

2

negotiations involving only the parties to *this* lawsuit. While this lawsuit will certainly generate information about the global market for Toyota's automotive parts, it will do so only when that information is relevant and proportional to resolving the dispute between these specific parties. Information will not be generated so one side or the other can obtain information that might be useful for other business and legal purposes. This lawsuit will resolve a dispute; it will not be a means to generate an educational overview of a particular segment of the automotive industry.

At oral argument, Toyota at times seemed to view this lawsuit as a component of corporate strategy rather than as a way of seeking compensation from businesses that had, in Toyota's eyes, harmed Toyota through the sale of mislabeled parts. The Court several times sought reassurance from Toyota, but this resulted in nothing more than a limited assurance from Plaintiff's counsel that Toyota would not use information from this case to identify suppliers and Toyota dealers involved in what it called "the gray market" for Toyota parts. But counsel also stated, emphatically, that "we're going to keep *scouring the earth* for where these gray market parts are coming from and where they are going," insisting it had "every right" to do so.

What Toyota does outside this lawsuit to identify "gray marketers" is not before the Court (though it is difficult to argue against the proposition that Toyota, like anyone else who believes they have been harmed, is entitled to use legitimate methods to determine who it was that harmed them). That said, the litigation management decisions this Court makes, including this decision about what a protective order should say, will be made with

the goal of keeping the focus on the case made in the complaint, the answer, and the counterclaims.

## II. LEGAL STANDARDS

A District Court has broad discretion in granting a protective order and may do so when it finds good cause. Fed. R. Civ. P. 26(c)(1)(G); *enXco Dev. Corp. v. N. States Power Co.*, No. 11-CV-1171 (MJD/JSM), 2012 WL 13026902, at *5 (D. Minn. Apr. 3, 2012). The burden of showing good cause falls on the party moving for the protective order. *Northbrook Digital, LLC v. Vendio Servs., Inc.*, 625 F. Supp. 2d 728, 734 (D. Minn. 2008). A protective order should "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

## III. ANALYSIS

In deciding whether in-house counsel for Plaintiff, Ms. O'Rourke, should be allowed to view "Attorney's Eyes Only" information, the Court balances the risk to the Defendant from any inadvertent disclosure of their highly confidential information against the risk that Plaintiff will be unable to make its case (or defend itself from the counterclaims). *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). The Court may not bar Ms. O'Rourke from seeing Attorneys' Eyes Only documents for no other reason than that she is in-house counsel for Toyota. *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed. Cir. 1984).

The parties agree, and so does the Court, that the main criterion to use in deciding whether highly confidential information can be shared with Ms. O'Rourke is whether her job involves "competitive decision making," defined by the Federal Circuit as "activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).

Ms. O'Rourke describes her role as managing business litigation. (O'Rourke Decl. ¶ 6.) She has been substantively involved in this case since it was filed, helping to formulate pleadings and giving strategic input on motions practice, (*Id.* at ¶¶ 7–8) though she does not make "substantive business decisions" such as business decisions about trademark enforcement or Toyota's approach to "gray market" parts. (*Id.* at ¶¶ 10–11.) The Court accepts the accuracy of this self-description, but also finds that in the overall context of this case—and specifically, other information of record about Ms. O'Rourke's role at Toyota, her team's function at Toyota, and statements of counsel at oral argument—Ms. O'Rourke is a competitive decision maker and therefore may not see highly confidential material.

Ms. O'Rourke gives legal support to a Toyota team that the Court understands from the record to be tasked with identifying, and then taking enforcement action against, those involved in the trade in "gray market" automobile parts. Enforcement action may sometimes take the form of legal action. Put differently, Toyota does many things—it designs cars, it manufactures those cars, it markets those cars, and so on, and all of those

5

activities are, no doubt, supported by lawyers assigned to Toyota teams specializing in design, manufacturing, and marketing. But the "products" made by Ms. O'Rourke's team for Toyota are enforcement actions, including lawsuits, against gray marketers. In the context of brand enforcement, the "pricing, product design, etc." activities listed by the *U.S. Steel* court as examples of competitive decision-making are questions such as who to sue; what resources to devote to a particular suit in light of the anticipated chances of success and the magnitude of any likely recovery; what information exists to support a contemplated suit against a particular potential defendant; the selection of counsel; and so on. This is what Ms. O'Rourke does and this is competitive decision-making.

Against this, Toyota asserted that it would be harmed if Ms. O'Rourke could not see Attorneys' Eyes Only material because her role with Toyota is litigation management, including management of this case. Toyota claimed that without Ms. O'Rourke, they would be "flying blind," unable to know who to depose and having to go to the extreme of redacting counsel's invoices for legal services because they would not even be allowed to disclose to Toyota whom they had deposed. The Court finds these claims simultaneously improbable and telling. They are improbable because while attorneys exist who, left on their own, really would have no idea how to conduct discovery in a case where they represent a party, professional incompetence of that magnitude is quite rare. Here, Toyota is represented by highly skilled partners at a major national law firm with a large number of lawyers devoted to an automotive practice. The Court trusts that counsel for Plaintiff can review documents marked Attorney's Eyes Only, formulate a discovery strategy, and

seek Ms. O'Rourke's input without divulging the highly confidential information they have reviewed.

Counsel's stated concern, though, is also telling because counsel might genuinely be without a compass if deposition witnesses were being identified with an eye towards information-gathering generally, not information-gathering for this lawsuit specifically. If general information-gathering is the goal of depositions, then even skilled, experienced counsel might need the guidance of a Toyota business unit, like the one to which Ms. O'Rourke gives legal support, whose mission is to ferret out "gray marketers." But as it is, lawyers take depositions to generate information that is relevant and proportional to the cases at bar, not to cases that one of the parties hopes to file in the future.

For these reasons, Toyota's request to share documents marked as Attorney's Eyes Only with Ms. O'Rourke (and Ms. Rojas) is respectfully denied, but with one reservation and one cautionary admonition. First, if there are individual documents that outside counsel feel they must discuss with Ms. O'Rourke, they can negotiate with opposing counsel about de-designation and, if necessary, file a motion to amend the protective order. *enXco Dev. Corp. v. N. States Power Co.*, No. 11-CV-1171 (MJD/JSM), 2012 WL 13026902, at *8 (D. Minn. Apr. 3, 2012). Second, the Court will be alert to over-use of the Attorneys' Eyes Only designation by Defendant and will not hesitate to order de-designation if that description is mis-used.

**IV.    ORDER**

For good cause shown, it is **HEREBY ORDERED THAT:**

**1       Definitions.**  As used in this protective order:

(a) "attorney" means an attorney who has appeared in this action;

(b) "confidential document" means a document designated as confidential under this protective order;

(c) to "destroy" electronically stored information means to delete from all databases, applications, and file systems so that the information is not accessible without the use of specialized tools or techniques typically used by a forensic expert;

(d) "document" means information disclosed or produced in discovery, including at a deposition;

(e) "notice" or "notify" means written notice;

(f) "party" means a party to this action; and

(g) "protected document" means a document protected by a privilege or the work-product doctrine.

2   **Designating a Document or Deposition as Confidential.**

(a) A party or non-party disclosing or producing a document may designate it as confidential if the party or non-party contends that it contains confidential or proprietary information.

(b) A party or non-party may designate a document as confidential by conspicuously marking each page with the word "confidential."

(c) Deposition testimony may be designated as confidential:

(1) on the record at the deposition; or

(2) after the deposition, by promptly notifying the parties and those who were present at the deposition.

(d) If a witness is expected to testify as to confidential or proprietary information, a party or non-party may request that the witness's deposition be taken in the presence of only those persons entitled to receive confidential documents.

**3** **Who May Receive a Confidential Document.**

(a) A confidential document may be used only in this action.

(b) No person receiving a confidential document may reveal it, except to:

(1) the court and its staff;

(2) an attorney or an attorney's partner, associate, or staff;

(3) a person shown on the face of the confidential document to have authored or received it;

(4) a court reporter or videographer retained in connection with this action;

(5) a party (subject to paragraph 3(c)); and

(6) any person who:

(A) is retained to assist a party or attorney with this action; and

(B) signs a declaration that contains the person's name, address, employer, and title, and that is in substantially this form:

> I have read, and agree to be bound by, the protective order in the case captioned *Toyota Motor Sales U.S.A., Inc. vl. Allen Interchange, LLC, et al.*, 22-cv-1681 (KMM/JFD) in the

>United States District Court for the District of Minnesota. As soon as my work in connection with that action has ended, but not later than 30 days after the termination of that action (including any appeals), I will return or destroy any confidential document that I received, any copy of or excerpt from a confidential document, and any notes or other document that contains information from a confidential document.
>
>I declare under penalty of perjury that the foregoing is true and correct.

(c) A party or non-party may supplement the "confidential" mark (see paragraph 2(b)) with the words "attorney's eyes only," in which case a confidential document so designated may not be revealed to another party.

(d) If a confidential document is revealed to someone not entitled to receive it, the parties must make reasonable efforts to retrieve it.

4  **Serving This Protective Order on a Non-Party.** A party serving a subpoena on a non-party must simultaneously serve a copy of this protective order and of Local Rule 5.6.

5  **Correcting an Error in Designation.** A party or non-party who discloses or produces a confidential document not designated as confidential may, within 7 days after discovering the error, provide notice of the error and produce a copy of the document designated as confidential.

6  **Use of a Confidential Document in Court.**

(a) Filing. This protective order does not authorize the filing of any document under seal. A confidential document may be filed only in accordance with LR 5.6.

    (b)    Presentation at a hearing or trial. A party intending to present another party's or a non-party's confidential document at a hearing or trial must promptly notify the other party or the non-party so that the other party or the non-party may seek relief from the court.

**7    Changing a Confidential Document's Designation.**

    (a)    Document disclosed or produced by a party. A confidential document disclosed or produced by a party remains confidential unless the parties agree to change its designation or the court orders otherwise.

    (b)    Document produced by a non-party. A confidential document produced by a non-party remains confidential unless the non-party agrees to change its designation or the court orders otherwise after providing an opportunity for the non-party to be heard.

    (c)    Changing a designation by court order. A party who cannot obtain agreement to change a designation may move the court for an order changing the designation. If the motion affects a document produced by a non-party then, with respect to the motion, that non-party is entitled to the same notice and opportunity to be heard as a party. The party or non-party who designated a document as confidential must show that the designation satisfies Fed. R. Civ. P. 26(c).

**8    Handling a Confidential Document after Termination of Litigation.**

    (a)    Within 60 days after the termination of this action (including any appeals), each party must:

      (1)    return or destroy all confidential documents; and

      (2)    notify the disclosing or producing party or non-party that it has returned or destroyed all confidential documents within the 60-day period.

(b)    Notwithstanding paragraph 8(a), each attorney may retain a copy of any confidential document submitted to the court.[2]

**9**    **Inadvertent Disclosure or Production to a Party of a Protected Document.**

(a)    Notice.

      (1)    A party or non-party who discovers that it has inadvertently disclosed or produced a protected document must promptly notify the receiving party and describe the basis of the claim of privilege or protection. If the party or non-party provides such notice and description, the privilege or protection is not waived.

      (2)    A party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party or non-party.

(b)    Handling of Protected Document. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).

---

[2] The Parties may draft their stipulation so that it allows retention of other documents as well — for example, correspondence that quotes or describes a confidential document.

**10**     **Security Precautions and Data Breaches.**

     (a)    Each party must make reasonable efforts to protect the confidentiality of any confidential document disclosed or produced to that party.

     (b)    A party who learns of a breach of confidentiality must promptly notify the disclosing or producing party or non-party of the scope and nature of that breach and make reasonable efforts to remedy the breach.

**11**     **Survival of Obligations.** The obligations imposed by this protective order survive the termination of this action.

Date: November 15, 2023            *s/ John F. Docherty*
                                                      JOHN F. DOCHERTY
                                                      United States Magistrate Judge