UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | No. 22-cv-1681 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Allen Interchange LLC, et al., | |
| Defendants. | |

---

Plaintiff and Counter Claim Defendant Toyota Motor Sales, U.S.A., Inc. (TMS) and Defendant and Counter Claimant Allen Interchange LLC (Allen) seek a protective order in this case. Both parties suggested similar competing protective orders. (Dkt. No. 77, 84). However, the parties disagreed on whether TMS's in-house attorney and paralegal are allowed to see discovery material designated "Attorney's Eyes Only" (AEO).

After hearing oral argument, United States Magistrate Judge John F. Docherty issued a Protective Order excluding TMS's in-house counsel, Ms. O'Rourke, and paralegal, Ms. Rojas, from seeing AEO materials. (Dkt. No. 101.) This matter is before the Court upon TMS's Objections to Magistrate Judge Docherty's November 13, 2023 Protective Order (the Protective Order). (Dkt. No. 114.)

Magistrate judges can hear nondispositive motions in the first instance, subject to district court reversal only where the decision is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a)(3). This standard of review is "extremely deferential" to the magistrate judge's decision. *Scott v. United States*, 552 F. Supp. 2d 917,

919 (D. Minn. 2008). Clear error exists when, in a review of the entire record, the District Court "is left with the definite and firm conviction that a mistake has been committed," even if there is evidence to support the position. *Shukh v. Seagate Technology, LLC*, 295 F.R.D. 228, 235 (D. Minn. 2013) (quotations omitted). A magistrate judge's finding is contrary to law when it fails to apply or misapplies the relevant law. *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008). However, courts rarely find magistrate judge decisions contrary to law in the absence of controlling authority. *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15–2666 (JNE/FLN), 2017 WL 1373257, at *3 (D. Minn. Apr. 13, 2017); *United States v. Boston Sci. Corp.*, No. 11-cv-2453 (JNE/SER), 2019 WL 4052327, at *2 (D. Minn. Aug. 28, 2019).

The Court has wide discretion to determine the scope of a protective order. *May Coating Techs. Inc., v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D. Minn. 1994). In determining whether Ms. O'Rourke and Ms. Rojas should have access to AEO materials, Judge Docherty balanced the risk of O'Rourke's inadvertent disclosure of Allen's highly confidential information against the potential harm to TMS's ability to adequately prosecute and defend its case. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). Judge Docherty held that the balance tipped in Allen's favor and against O'Rourke and Rojas's access to AEO documents.

Judge Docherty, at the suggestion of both parties,[1] references the Federal Circuit's *U.S. Steel Corp. v. United States* regarding whether in-house counsel should have access to AEO materials. 730 F.2d 1465 (Fed. Cir. 1984). In *U.S. Steel*, the Federal Circuit held that the degree of the lawyer's involvement in "competitive decisionmaking" was critical to determining their access to AEO materials. 730 F.2d at 1468 n.3. Competitive decisionmaking is "a counsel's activities, association, and relationship with a client" that "involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* The *U.S. Steel* court rejected a bright-line approach based solely on the lawyer's formal position in lieu of a counsel-by-counsel analysis of each lawyer's factual circumstances. *Id.* at 1468–69. By determining if the lawyer's "advice and participation" made her a competitive decisionmaker, the court could assess the level of risk of inadvertent disclosure.

### *Clearly Erroneous*

TMS argues that the Protective Order is clearly erroneous because there is no evidence that O'Rourke is involved in any competitive decisionmaking. The Court disagrees.

TMS generally asserts that O'Rourke does not make substantive business decisions, but rather that the responsibilities stated in her Declaration are only legal in nature, including managing commercial disputes and providing legal advice to TMS. (Dkt.

---

[1] Dkt. No. 114 at 4–5; Dkt. No. 79, 86, 93, 95.

No. 114 at 5–6; O'Rourke Decl. at ¶ 6.) TMS first argues that the Protective Order is clearly erroneous because Judge Docherty improperly "minimize[d]" O'Rourke's Declaration, instead relying too heavily on other items in the record. (Dkt. No. 114 at 4–5.) Second, TMS asserts that O'Rourke's legal responsibilities, which include selecting counsel, resource allocation decisions, and determining the likelihood of success and recovery in lawsuits, do not constitute competitive decisionmaking. (*Id.* at 5–9.) The responsibilities cited that could constitute competitive decisionmaking, like deciding who to sue and developing information for the lawsuit, TMS argues are absent from the record. (*Id.* at 7–8).

First, the Court disagrees that Judge Docherty "minimize[d]" O'Rourke's Declaration. O'Rourke's Declaration states that she is primarily charged with "managing various commercial disputes," including litigation against "suppliers, vendors, or third parties, such as the instant litigation." (O'Rourke Decl. at ¶ 6.) She also says that she does not make "substantive business decisions" relating to trademark enforcement or the gray market. (*Id.* at ¶ 10.) Judge Docherty noted that he "accept[ed] the accuracy" of these statements, but that its contents were outweighed by the rest of the record. (Dkt. No. 101 at 5.) Specifically, counsel for TMS claimed at oral argument that TMS intended to "scour[] the earth" to enforce their interests against the gray market and that O'Rourke "absolutely" gave advice on whether or not to go after specific gray market operators. (Dkt. No. 113 at 9:1–3, 12:10–12.) Accepting O'Rourke's description of her role in enforcement litigation and TMS's intent to bring future enforcement actions, Judge Docherty reasonably concluded that O'Rourke is involved in competitive decisionmaking.

4

Next, TMS criticizes Judge Docherty's weighing of the record before him. TMS relies on the fact that the Declaration is "unrebutted" to argue that the Declaration should be given "considerably more weight" than the rest of the record. (Dkt. No. 114 at 4.) However, Judge Docherty is tasked with reviewing the entire record in front of him and is not tied to weighing that evidence as TMS advocates. Even if read in isolation, the responsibilities described in O'Rourke's Declaration show that her involvement in enforcement litigation would raise concerns about inadvertent disclosure. And the text of *U.S. Steel* supports conducting a holistic inquiry into all of the factual circumstances governing a lawyer's responsibilities and relationships, rather than relying on a specific part of the record or one party's own declaration. Judge Docherty's review of the record was not clearly erroneous in his conclusion that O'Rourke is a competitive decisionmaker.

Judge Docherty also did not err in deciding that O'Rourke's responsibilities constitute competitive decisionmaking. TMS asserts that the responsibilities as cited in the Protective Order, when taken individually are either insufficient to be competitive decisionmaking or lack support in the record. However, this argument misses the mark of both *U.S. Steel*'s approach and Judge Docherty's line of reasoning. Again, *U.S. Steel* sets forth a totality of the circumstances approach to determining if an attorney is a competitive decisionmaker. *U.S. Steel*, 730 F.2d at 1468, 1468 n.3. Picking a single responsibility upon which to make this decision would undermine the central holding of *U.S. Steel*. Instead, a holistic review, like the one performed by Judge Docherty, is used to determine if a lawyer is a competitive decisionmaker.

TMS's objections also sidesteps Judge Docherty's primary concern: that O'Rourke's support of and proximity to TMS's brand enforcement efforts greatly heightens the risk of inadvertent disclosure. O'Rourke's Declaration states that she is involved in managing actions taken against "suppliers, vendors, and third parties," like the enforcement action taken here. (O'Rourke Decl. at ¶ 6.) TMS has also conceded that it is taking an aggressive approach to identify and act against "gray market" operators and that O'Rourke is involved in those cases. (Dkt. No. 114 at 8; Dkt. No. 113 at 9:1–3, 12:10–12.) When addressed at oral argument, counsel for TMS doubled down, resulting in Judge Docherty reasonably concluding that these efforts were part of its corporate strategy rather than just compensatory actions. (Dkt. No. 113 at 9:1–3, 12:10–12.) This campaign by TMS puts O'Rourke in a position to advise, and potentially litigate on behalf of, those who would act against the same entities disclosed through discovery in this case. In conducting a *U.S. Steel* analysis, Judge Docherty was not clearly erroneous in determining that O'Rourke was a competitive decisionmaker.

*Contrary to Law*

TMS next contends that Judge Docherty's Protective Order is contrary to law and raises six arguments in support of this claim. Again, the Court finds TMS's position unpersuasive.

TMS's first and fourth arguments assert comparable points: that legal advice is not enough to make an attorney a competitive decisionmaker. Relying on *Matsushita Electric Industrial Co. v. United States*, 929 F.2d 1577 (Fed. Cir. 1991), TMS contends that providing legal advice to competitive decisionmakers is, by itself, not enough to constitute

6

a lawyer as a competitive decisionmaker. The *Matsushita* court held that "[i]t is a natural extension of the rule enunciated . . . in *U.S. Steel* that a denial of access sought by in-house counsel on the sole ground of status as a corporate officer is error." *Id.* at 1580. That is entirely consistent with the case-by-case approach adopted in *U.S. Steel*, and as explained above. Judge Docherty did not simply rely on the fact that O'Rourke provides legal advice, nor based his decision solely on O'Rourke's job title. Rather, Judge Docherty considered that she provides legal advice as part of a broader inquiry, focusing not only on who she is advising, but also on the type of advice she gives and the kinds of competitive decisions she influences.

TMS also mischaracterizes *Matsushita*. In *Matsushita*, the Federal Circuit conducted a *U.S. Steel* analysis, determining the in-house counsel at issue was allowed to see AEO materials because he was not a competitive decisionmaker. 929 F.2d at 1580. However, the in-house counsel there was tasked only with providing the company's decisionmakers with employee benefit advice, completely separate from any business decisions involved in the antidumping action at bar. *Id.* at 1579–80. Here, O'Rourke provides advice to TMS's decisionmakers on sufficiently similar matters to this one to create a heightened risk of inadvertent disclosure. Judge Docherty's decision to find O'Rourke to be a competitive decisionmaker is reasonable under these facts and not contrary to law.

Second, TMS asserts that designating O'Rourke as a competitive decisionmaker would cause all in-house counsel to be ineligible to view AEO materials, citing cases from this District where courts have permitted access by in-house counsel. However, preventing

7

O'Rourke from accessing AEO materials in this case does not prevent future in-house counsel from doing so in the future. Instead, each counsel must be treated individually based on their own factual circumstances. *U.S. Steel,* 730 F.2d at 1468. While courts in this District have reached various conclusions based on case-specific facts in other cases, that does not suggest that Judge Docherty misapplied the law in this case.

Third, TMS states that Judge Docherty did not conduct a "degree of involvement" analysis in making his determination. However, the degree of involvement analysis, taken from *enXco Development Corp. v. Northern States Power*, is just a restatement of the *U.S Steel* framework. No. 11-1171 (MJD/JSM), 2012 WL 13026902, at *5 (D. Minn. April 3, 2012) (stating that "A lawyer's degree of involvement in competitive decision-making" is crucial to a *U.S. Steel* analysis). As discussed above, Judge Docherty appropriately conducted a *U.S. Steel* analysis here and came to a reasonable conclusion.

TMS also argues that there was no evidence in the record of the types of job responsibilities required to conduct a degree of involvement analysis. Reading the documents presented by the parties and their presentations at Oral Argument as a whole, the rationale for Judge Docherty's ruling is apparent, specifically his concerns about O'Rourke's involvement in enforcement actions. Whether it is described as a *U.S. Steel* framework or a degree of involvement analysis, Judge Docherty's ruling is appropriate and not contrary to law.

Fifth, TMS asserts that its retention of highly skilled outside counsel for this case does not minimize its need for O'Rourke to have access to AEO materials. This Court disagrees. The skill and experience of outside counsel mitigate much of the harm TMS

8

would face from O'Rourke's exclusion from seeing AEO documents. As Judge Docherty stated, TMS's outside counsel can review AEO documents, formulate a discovery strategy, and "seek Ms. O'Rourke's input without divulging the highly confidential information they have reviewed." (Dkt. No. 101 at 6–7.) Further, the parties are free to negotiate the disclosure of certain AEO documents or renegotiate the Protective Order. (*Id.* at 7.) Judge Docherty also made clear that he would protect TMS from Allen's "over-use" of the AEO designation. (*Id.*) In balancing the risk of inadvertent disclosure by O'Rourke against the harm to TMS's ability to litigate this case, Judge Docherty's conclusion is not contrary to law. *Brown Bag Software*, 960 F.2d at 1470.

Sixth, TMS argues that O'Rourke's access to AEO materials would not undermine her ethical responsibilities to TMS. While he did not discuss this point in his Protective Order, Judge Docherty addressed this concern at oral argument. (Dkt. No. 113 at 10:15–23.) Even if it had been part of his holding rather than just a discussion at oral argument, Judge Docherty could have reasonably concluded that O'Rourke's ethical responsibilities to TMS would be affected if she was granted access to Allen's AEO materials. This Court, like Judge Docherty, does not doubt that Ms. O'Rourke can and will operate under the highest ethical standards or that she will faithfully honor the Protective Order. However, it is reasonable to conclude that this exposure would put O'Rourke in an "untenable position" of choosing to provide the legal advice she is bound to give and prevent disclosure of confidential information that she is bound to protect. *Brown Bag Software*, 960 F.2d at 1471. As Judge Docherty concluded, O'Rourke's responsibilities and relationship to TMS's brand enforcement actions create a situation where the risk of inadvertent disclosure

9

is significantly heightened, as *U.S. Steel*'s competitive decisionmaker framework was intended to determine.

Finally, nowhere in its appeal did TMS present any controlling authority that Judge Docherty contradicted. *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation*, MDL No. 15–2666 (JNE/FLN), 2017 WL 1373257, at *3; *Boston Scientific Corp.*, No. 11-cv-2453 (JNE/SER), 2019 WL 4052327, at *2. And TMS pointed to no controlling authority in its moving papers submitted to Judge Docherty that would have mandated a different result. Judge Docherty's November 13, 2023 Protective Order excluding Ms. O'Rourke and Ms. Rojas was neither clearly erroneous nor contrary to law.

For these reasons, Plaintiff and Counter Defendant Toyota Motor Sales, U.S.A., Inc.'s objections to Magistrate Judge John F. Docherty's November 13, 2023 Protective Order are **OVERRULED** and Magistrate Judge John F. Docherty's November 13, 2023 Protective Order is **AFFIRMED**.

Date: April 12, 2024            *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge