## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Toyota Motor Sales, U.S.A., Inc.,

Plaintiff,

v.

Allen Interchange LLC, Applegate
Supply, Patriot Parts of Texas, Bluestone
Auto Products, OEM Parts Company,
Factor Parts Direct, Autoworks
Distributing, and Defendants Does 1–10,

Defendants.


Allen Interchange LLC,

Counterclaimant,

v.

Toyota Motor Sales, U.S.A., Inc., and
Toyota Motor North America, Inc.,

Counter-defendants.

Case No. 22-CV-1681 (KMM/JFD)

**ORDER**

This matter is before the Court on the parties' discovery motions, including several cross-motions to compel and motions for protective order (Dkt. Nos. 116, 123, 141, 164, 175, 189).

## I.    Background

This lawsuit involves claims and counterclaims between competitors selling genuine Toyota parts to Toyota dealers in the United States. (*See generally* Dkt. Nos. 5,

15.) Toyota Motor Sales, USA, Inc. ("TMS"), a subsidiary wholly owned by Toyota Motor North America, Inc. ("TMNA"),[1] filed the suit alleging trademark violations under the Lanham Act against Allen Interchange LLC,[2] focusing on the latter's importation and sale of Toyota parts in the United States. (*See* Dkt. No. 5.) In response, Allen Interchange filed an aggregate of eight counterclaims against both TMS and TMNA (collectively, "Toyota"). (*See* Dkt. No. 15.)

Toyota sells vehicles and parts to Toyota dealers under a standard dealer agreement. Most parts in Toyota vehicles do not have aftermarket substitutes from independent third parties. The parties refer to such parts as "Captive Parts." Toyota dealers sell Toyota vehicles, provide repair and maintenance services, and may sell Toyota parts to owners. Toyota allegedly sells parts in the U.S. at significantly higher prices than the prices charged by other Toyota entities elsewhere in the world.

Allen Interchange competes with Toyota for sales of Toyota parts. Allen Interchange purchases Toyota parts initially sold outside the U.S. and resells them to

---

[1]   Toyota Motor North America, in turn, is a subsidiary of Toyota Motor Corporation, a Japanese company ("Toyota Japan") which is not a party to this lawsuit. (*See generally* Dkt. No. 58 (order denying Allen Interchange's motion for joinder of Toyota Motor Corporation).) Where necessary, the Court will refer to the Toyota Parties, TMS and TMNA, as "Toyota USA" to distinguish them from Toyota Japan.

[2]   The Amended Complaint named other defendants, including Applegate Supply, Patriot Parts of Texas, Bluestone Auto Products, OE Parts Company, Factory Parts Direct, Autoworks Distributing, and Does 1 through 10. (Dkt. No. 5 at 1.) In its answer, Allen Interchange acknowledged that none of the remaining named defendants are legal entities, they are instead "names under which Allen Interchange has conducted business." (Dkt. No. 15 at 1 n.1.)

Toyota dealers and others in the U.S. at lower prices than equivalent parts that Toyota sells directly in the U.S. market. The parties refer to parts purchased outside the U.S. and resold within the U.S. by Allen Interchange and other, like resellers, as "Gray Market Parts." According to Allen Interchange, Gray Market Parts bear the same part numbers and are identical in design, function, and quality as genuine Toyota parts.

Toyota brought several causes of action against Allen Interchange, invoking the Lanham Act. Toyota alleges that Allen Interchange is a Gray Market Parts supplier, importing and selling Toyota-branded parts intended by Toyota for sale or use outside the U.S. Toyota claims these parts have material differences from the "genuine" parts it sells, such as the absence of a manufacturer-backed warranty, the shipping of the parts, and the handling of "outdated" parts.

In response, Allen Interchange asserted several antitrust and related counterclaims, alleging that Toyota engaged in anticompetitive and unfair conduct that was aimed at preventing authorized Toyota dealers from purchasing and reselling parts from Allen Interchange.

Before the Court are a mix of discovery motions from both sides (Dkt. Nos. 116, 123, 141, 164, 175, 189). The Court heard oral arguments on each of them and is rendering its decisions as set forth below.

## II.   Legal Standards

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining

proportionality, courts consider numerous factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, and importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party believes that an opposing party has failed to respond to discovery, or has served insufficient responses, it may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). A court may compel responses if a party fails to designate a witness for deposition as noticed under Rule 30, to answer an interrogatory propounded under Rule 33, or to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(ii)–(iv). For purposes of such a motion, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

A proper discovery response must either answer the request fully or state with specificity the grounds for objecting to the request. *See* Fed. R. Civ. P. 33(b), 34(b)(2). Objections must be stated with specificity and in relation to specific requests; any ground "not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012). The party seeking discovery bears the initial responsibility for making a threshold showing of relevancy before the production of information is required. *See, e.g.*, *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

In addition, Federal Rule of Civil Procedure 26 provides for the entry of a protective order on motion by the party from whom discovery is sought. Fed. R. Civ. P. 26(c)(1). Upon a showing of good cause, a court may issue such an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "[T]he movant bears the burden of demonstrating the necessity of a protective order." *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013). If a party prevails on its motion to compel, the court must award it expenses unless the opposing party's conduct was "substantially justified" or it would be otherwise unjust to order expenses. Fed. R. Civ. P. 37(a)(5).

## III.   Discovery Issues Presented by the Parties' Motions

### A.   Written Discovery

Toyota and Allen Interchange have brought cross-motions to compel further discovery responses from one another. (Dkt. Nos. 116, 123, 189.) The parties' motions pertain to various discovery issues, which the Court considers in turn below.

> 1.   Allen Interchange's First Motion to Compel Further Responses from Toyota (Dkt. No. 116)
>
> > a.   *TMNA's Obligations Vis-à-Vis Discovery Requests Originally Served on TMS*

The first issue on Allen Interchange's first motion to compel (Dkt. No. 116) is whether discovery requests it served on TMS (the initial plaintiff) prior to the joinder of TMNA (its parent corporation) should be considered as having been served on TMNA as well.

This issue arises in part because the Scheduling Order in this case allows the parties to serve no more than 40 interrogatories and 100 document requests on "each side." (Dkt. No. 63 at 2.) Allen Interchange served the discovery requests at issue on TMS only—because at the time of the requests, TMNA had not been joined as a named defendant in Allen Interchange's countersuit. After the joinder of TMNA, Allen Interchange has asked TMNA "to respond to the pending requests" previously served on TMS due to "the overlapping operations and close relationship between [TMNA and TMS]." (Dkt. No. 118 at 2.) Toyota has refused to comply with this request.

Federal Rule of Civil Procedure 34 requires a party to produce not only those documents within its possession or physical custody, but also responsive documents that are within the party's "control." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 635 (D. Minn. 2000) (citing Fed. R. Civ. P. 34(a)). "Control" is defined broadly as the "the legal right, authority, or ability to obtain upon demand documents in the possession of another." *Id.* at 636; *accord Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) ("The question, therefore, is not only whether the documents are within the physical possession of the party, but also whether the party has a legal right to the documents or practical ability to obtain the information.").

The party to whom the discovery is directed thus need not have legal ownership or actual physical possession, but rather a "practical ability" to obtain the documents, to be required to produce them. *See In re Application of Hallmark Capital Corp.*, 534 F. Supp. 2d 981, 982 (D. Minn. 2008) (individual defendant had "control," *i.e.*, the "practical ability" to obtain, documents in the possession of his partnership). Under certain

6

circumstances, courts can treat related corporate parties as a single "party" for discovery purposes. *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 399 (S.D.N.Y. 2006); *Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650 (D. Colo. 2005)); *see* Charles Alan Wright, Federal Practice & Procedure § 2168.1 at 261 (2d ed. 1994) ("In instances of legally related parties such as a parent corporation and its subsidiary, this could be particularly attractive."). Even when a parent company is not a party in litigation, courts have found that the information of a parent company can be within the "control" of a subsidiary and therefore subject to production. *See, e.g.*, *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 443 (D.N.J. 1991) (wholly owned subsidiary had sufficient control to obtain information from parent corporation because parent corporation was intimately involved with contract at issue, documents were part of regular course of business between two companies, and subsidiary had "easy and customary access" to parent corporation's documents involving the transaction at issue); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 130 (D. Del. 1986) (documents of a non-party parent corporation were in control of alleged infringing corporation because of overlapping officers, directors, and employees, parent corporation's involvement in manufacture of accused product, and financial impact a ruling on patent infringement would have on parent corporation).

Here, there is no dispute regarding whether TMS has control over information TMNA's possession, custody, or control. Accordingly, the Court orders the Toyota Parties to treat discovery requests from Allen Interchange as served on both TMS and TMNA and respond to such discovery accordingly.

>    b.    *Toyota's Profits and Sales of Toyota Parts—Interrogatory*
>          *No. 16 & Requests for Production Nos. 39–44*

Allen Interchange asserts that it is entitled to information concerning Toyota's profits and sales in connection with its Lanham Act counterclaim. Toyota does not dispute this, but argues instead that it is not required to provide such information unless and until Allen Interchange identifies the specific Toyota parts at issue on its Lanham Act claim, *i.e.*, the Gray Market Parts. (Dkt. No. 132 at 9–10.) The Court agrees with Toyota here.

To be entitled to recover profits on its Lanham Act claim, Allen Interchange must prove Toyota's sales of the allegedly falsely advertised products. *See Aviva Sports, Inc. v. Fingerhut Direct Mktg.*, 829 F. Supp. 2d 802, 819 (D. Minn. 2011). This is not the same as company-wide sales of all parts. *See Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222, 1244 (10th Cir. 2022) ("otherwise a plaintiff alleging false advertising could simply introduce 'total companywide sales data' for the defendant and then put the burden on defendant to disprove that the false advertising 'affected every dollar of revenue'"). Only the sales of the falsely advertised products are relevant here. But Allen Interchange has failed to demonstrate how the limits it imposes—*i.e.*, "sold at a dealer net cost over $5.00" and "rank[ing] in the top 15% by yearly sales volume of parts"—relate to the parts at issue.[3]

---

[3]    At oral argument, Allen Interchange asserted that it *might* start selling any Toyota parts on short notice, making the information relating to the sales of all Toyota parts relevant. But it will not be able to demonstrate any damages based on such a speculative premise. *See McClaran v. Plastics Indus., Inc.*, 97 F.3d 347, 361–62 (9th Cir. 1996) (reversing jury's damages award based on speculation that "[plaintiff] could have competed with [defendant's products] if they had been properly marked").

In addition, Allen Interchange also argues that sales and profits information is relevant to its antitrust claims because, among other things, "[Toyota's] profits and profit margins are evidence of [its] market power." (Dkt. No. 118 at 41 (citing *Baker's Aid v Hussmann Foodservice Co., Inc.*, 730 F. Supp. 1209, 1218 (E.D.N.Y. 1990)).) But Allen Interchange has not explained how Toyota's profits and sales information would allow it to determine Toyota's market power. *See also Epic Games, Inc. v. Apple Inc.*, No. 20-CV-5640, 2020 WL 7779017, at *4 (N.D. Cal. Dec. 31, 2020) ("But if the Court ordered [defendant] to produce profit information for [its products], how would [plaintiff] know if those profits were supracompetitive?").

Moreover, even if sales and profits information would be relevant to Toyota's market power, Allen Interchange has failed to demonstrate the need for the granular information it seeks based on that theory. Without such a demonstration (and assuming for the moment that the requested information is relevant), this request is also disproportionate. Toyota represents that there are more than 1 million currently active Toyota parts, and that the number of Toyota parts would be even larger if non-active (*i.e.*, superseded and terminated) parts were included in the total. (Dkt. No. 132 at 17.) The information on a part-number level for 15% of the total sales would thus reflect data relating to the sales of more than 100,000 individual parts to 1,450 individual dealers. The burden of producing such discovery appears substantial and likely outweighs its benefit.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 116) as to this category of information.

c.      *Dealership Prices—Request for Production No. 37*

Allen Interchange seeks all documents reflecting the price of any Toyota dealership that changed ownership since 2019. This information is relevant, it argues, to show Toyota's market power. (Dkt. No. 118 at 42–43 ("If the threat of terminating a dealer agreement—and, by extension, the dealer's franchise, is a hammer, then the market value of a dealership is the size of the hammer.").)

Toyota objects on various grounds, including that the request is overly broad. (Dkt. No. 132 at 18–21.) The Court agrees as it sees no reason why Allen Interchange requires "all documents reflecting" these Toyota dealership prices to show Toyota's market power. The Court notes Toyota's willingness to stipulate that "Toyota dealerships are valuable" and that "most dealers abide by their obligations under their Toyota Dealer Agreements for many reasons, including a desire to retain and protect their dealerships." (*Id.* at 20.) In light of Toyota's representations and the request's overbreadth, the Court finds it overly disproportionate on its face and denies Allen Interchange's motion to compel (Dkt. No. 116) as to this document request.

d.      *Contact Reports—Requests for Production Nos. 10 & 15*

Allen Interchange seeks contact reports, *i.e.*, records of Toyota's interactions with dealers, relating to Toyota parts. Toyota does not challenge the relevancy of these documents, but resists discovery on burden and proportionality grounds. (Dkt. No. 132 at 21–22.)

Indeed, Toyota agrees to produce relevant contact reports if reasonably limited. Accordingly, the Court orders the parties to meet and confer to identify 10 dealers whose

records should be subject to a full search and production in response to these requests. The Court denies without prejudice the remainder of Allen Interchange's motion to compel (Dkt. No. 116) relating to this discovery at this time. Allen Interchange may renew this portion of its motion based on the result of its review of the documents produced in response to the Court's order.

       e.      *Dealer Files of Suspected Gray Market Parts Purchases—Request for Production No. 36*

Allen Interchange seeks dealer files for any Toyota dealers that Toyota suspects to have purchased Gray Market Parts. Such documents are purported to show the improper pressure Toyota places on dealers to buy only from Toyota. (Dkt. No. 118 at 46.)

Toyota describes these dealer files as containing a variety of documents—including dealer applications, dealer agreements, documents related to dealer facility, ownership, or management or sales of vehicles or parts, correspondence, and Toyota's internal assessments. (Dkt. No. 132 at 24.) Of those components, Toyota contends, the only information potentially relevant would be the communications that are already covered by other discovery requests. (*Id.*) Allen Interchange has not disputed these characterizations.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 116) as to this document request.

2.      Allen Interchange's Second Motion to Compel Further Responses
         from Toyota (Dkt. No. 189)

a.      *Effective Dates of Dealer Agreements—Request for
          Production No. 47*

Allen Interchange seeks all agreements between Toyota and any dealers that were

in effect at any point in time since 2017 and that pertain in any way to Toyota parts.

It appears that Toyota has at least two versions of its standard dealer agreement. The

two versions differ from one another as to, among other things, the warning given to dealers

about using Gray Market Parts. Allen Interchange seeks discovery of the version of the

Toyota dealer agreement which applies to each Toyota dealer in the U.S. It maintains that,

in addition to knowing the effective dates of the dealer agreements, Allen Interchange

needs to validate whether the "distributor" listed on the agreements is TMS or another

entity. Moreover, to the extent Toyota has amended the dealer agreement to explicitly bar

the purchase of Gray Market Parts, that action provides additional evidence of an illegal

agreement that supports Allen Interchange's antitrust claims.

The Court is far from persuaded that Allen Interchange needs the *entire* agreement

for each of the more than 1,500 Toyota dealers in the U.S. to make these showings.

Moreover, Toyota has expressed a willingness to answer an extra interrogatory identifying

the dealer agreement version for each dealer who has done business with Allen

Interchange. The Court finds that this compromise is a proportional method of resolving

this discovery dispute.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189)

as to this document request, but will allow Allen Interchange to serve one additional

interrogatory. While the exact language of the interrogatory is left to Allen Interchange, in general terms, this interrogatory must be limited to asking Toyota to identify the version of the standard dealer agreement under which each Toyota dealer in the United States has operated since 2017.

> b.   *Dealer Cost Documents and Electronic Price Catalogs—*
> *Requests for Production Nos. 48 & 49*

Allen Interchange seeks the entire Toyota parts catalog, including the price Toyota dealers pay for each part and the part's cost and list price. Allen Interchange asserts that this information will show that Toyota treats Captive Parts and non-Captive Parts differently for pricing purposes. Toyota, again, questions Allen Interchange's standing to pursue any claims or assert any damages with respect to parts that it does not sell.

As explained above, on its Lanham Act claim, Allen Interchange may seek only disgorgement of Toyota's profit on the parts that Allen Interchange does sell. However, its antitrust claims—which cover Toyota's efforts to monopolize the entire market for Captive Parts—does make Captive Parts relevant here.

That said, the Court is far from persuaded that Allen Interchange needs part-level data to show that Toyota prices Captive Parts differently than other products. And Allen Interchange is not entitled to discovery of pricing data of *all* Toyota parts—which include more than 1 million active parts alone—to make this showing. The burden of such discovery would be disproportionate to the needs of the case.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189).

c.      *Brand Protection Documents—Request for Production No. 50*

Allen Interchange seeks documents relating to Toyota's brand protection efforts since 2014 relating to Gray Market Parts. Toyota's "brand protection" activities, Allen Interchange argues, are central to its counterclaims. Moreover, Allen Interchange maintains that the discussions between Toyota USA and Toyota Japan may reflect diverging interests that may be relevant to Toyota USA's standing and whether Toyota Japan is a necessary party for the Toyota Parties' claims, all of which rely on trademarks owned by Toyota Japan. (Dkt. No. 191 at 21–22.)

Toyota counters that alignment of interests is irrelevant to Toyota's claims because the issue is whether Allen Interchange is using the Toyota brand to compete unfairly with Toyota and whether Allen Interchange falsely advertised the parts it sells. Toyota concedes, however, that at least brand protection documents from 2014 *specifically mentioning Allen Interchange* (including its assumed names) are subject to discovery here.

The Court agrees that documents generated by the Brand Protection Group, established at Toyota in 2014, relating to Gray Market Parts are relevant to Allen Interchange's claims and should be produced. Limiting production of such documents to those that specifically mention Allen Interchange would result in an underinclusive production, because it would not capture documents relating to Gray Market Parts generally, in terms that are applicable to Allen Interchange even if Allen Interchange is not written about by name.

Accordingly, the Court grants Allen Interchange's motion to compel (Dkt. No. 189) on this issue as to any brand protection work relating to Gray Market Parts since 2014.

> d.    *Communications with Toyota Japan—Request for Production No. 54*

Allen Interchange seeks communications between Toyota USA and Toyota Japan relating to Gray Market Parts. In addition to the same standing and diverging-interests arguments discussed above, Allen Interchange also maintains that these communications can show that Toyota Japan may be benefiting from the flow of Gray Market Parts to the U.S., which would be relevant to Toyota USA's claim of damages. (Dkt. No. 191 at 30.)

Toyota contests the relevancy of these communications and notes that several of Allen Interchange's prior discovery requests already encompass documents reflecting communications about Toyota's brand protection efforts.

Based on the parties' arguments in their briefs and at oral argument, the Court finds that Allen Interchange has failed to carry its burden of showing the relevancy of the documents to justify the expansive scope of this discovery. Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

> e.    *Handling of "Outdated" Inventory—Request for Production No. 68*

Allen Interchange seeks communications between Toyota and Toyota dealers relating to outdated and superseded parts. The parties do not squabble over the relevancy of these communications as much as over how they should be gathered and produced in discovery. On the one hand, Toyota asserts that this request largely duplicates prior requests and that Toyota can do nothing more to comply with Allen Interchange's demands. On the other hand, Allen Interchange insists that it is unlikely that the initial set

of custodians that Toyota designated—focused mainly on Gray Market Parts—cover those who engage with Toyota dealers on inventory matters.

Given the parties' positions, the Court sees no reason to intervene in their discovery efforts at this point. The Court reminds counsel, however, that:

> As a general matter, it is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility, and a responding party is best situated to preserve, search, and produce its own electronically stored information, which principle is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel, and eschewing "discovery on discovery," unless a specific deficiency is shown in a party's production.

*Veroblue Farms U.S., Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (cleaned up). Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

    f. *Agreements and Communications with Distributors and Sub-Distributors—Requests for Production Nos. 69 & 53*

Allen Interchange seeks agreements between the Toyota parties and other Toyota distributors, as well as their communications relating to Gray Market Parts, superseded parts, discontinued parts, outdated parts, parallel imports, Toyota's Brand Protection Group, Allen Interchange, etc.

In support of its Lanham Act claims, Toyota alleges that there are material differences between genuine Toyota parts that Toyota intends to, and does, sell in the U.S. and those that it intends to sell elsewhere in the world. Those material differences include: the existence of a manufacturer-backed warranty, the shipping of the parts, and the

handling of "outdated" parts. Allen Interchange thus maintains that it is entitled to explore whether Toyota's agreements and communications with other distributors reflect how the alleged material differences exist in the products sold through Toyota's chain. (Dkt. No. 191 at 33–34.)

Toyota, in turn, argues that the terms of the distributor agreements are not only highly confidential, but also irrelevant because the material differences at issue apply to all Toyota-branded parts sold in the U.S. regardless of whether they are sold directly by Toyota or through independent Toyota distributors. With regards to its communications with the distributors, Toyota maintains that its ongoing searches for documents responsive to prior requests will also capture relevant information here. (Dkt. No. 210 at18.)

The Court has no reason to question Toyota's representations, but does not find them sufficient to negate the relevancy of Toyota's agreements with other distributors or sub-distributors. They may show, for example, that Toyota agrees to alternative shipping methods or methods for handling outdated parts. Given the competitively sensitive nature of the agreements, however, the Court will not order production of all such agreements absent a sufficient showing of necessity.

Accordingly, the Court grants in part Allen Interchange's motion to compel (Dkt. No. 189) on these documents requests as to a random set of agreements for no more than 10 distributors located in Minnesota, where Allen Interchange conducts its business.

g.    *Communications with Amazon—Request for Production No. 74*

Allen Interchange seeks Toyota's communications with Amazon. It takes issue with Toyota's discovery conduct as discussed above. In response, Toyota represents that it has agreed to search for and produce relevant, responsive documents memorializing communications with Amazon from 2017 forward and from 2012 to 2017 to the extent they relate to Allen Interchange.

The Court agrees that there is no real dispute requiring resolution by the Court at this point. *See also Veroblue Farms*, 345 F.R.D. at 420. Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

h.    *Policies and Volumes for Warranty-Claim Reimbursements from Suppliers—Requests for Production Nos. 79 & 46*

Allen Interchange seeks documents relating to the processes, procedures, and reimbursements of Toyota warranty claims. More specifically, Allen Interchange demands each version of the Warranty Policies and Procedure Manual and Warranty Procedure Bulletins from 2015 onward—because the Toyota Parts Warranty that Toyota contends creates a material difference between the Toyota parts sold by the parties changed significantly over time. (Dkt. No. 191 at 40.)

Toyota has agreed to produce warranty claim data for all service part warranty claims from 2017—<u>excluding</u> information about payments, credits, or reimbursements. Such information is irrelevant, Toyota argues, because it does not claim harm in the form of damages resulting from Allen Interchange's conduct. Instead, the harm comes from

Allen Interchange's misappropriation of Toyota's trusted and valued name through unscrupulous conduct. (Dkt. No. 210 at 13–14.) The Court agrees.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189) as to these document requests.

<em>i. Survey and Other Data Showing Captive and Non-Captive Parts—Request for Production No. 60</em>

Allen Interchange seeks a listing of all Toyota Captive Parts. Toyota represents that it has already agreed to conduct a reasonable, proportional, and diligent search to produce responsive documents.

Accordingly, the Court denies as moot Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

<em>j. Organizational Charts—Request for Production No. 66</em>

Allen Interchange seeks Toyota's organization charts since 2017. It is not clear to the Court why these documents are relevant.

The Court agrees with Toyota that this appears to be a fishing expedition that bears no rational relationship to the issues in this case and, thus, denies Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

<em>k. Dealer Purchases or Sales of Counterfeit Goods—Request for Production No. 73</em>

Allen Interchange seeks all documents relating to the purchase or sale of counterfeit Toyota parts by Toyota dealers in the U.S. It argues that any such instances are "relevant to the issue of the misleading nature of the grouping of counterfeit and gray market parts in [Toyota's] Brand Protection materials sent to dealers" and "the frequency of instances

19

in which a Toyota dealer has purchased or sold counterfeit parts" may be "negligible." (Dkt. No. 191 at 46.)

The Court finds this argument unpersuasive. It is unclear how documents in Toyota's possession would fairly reflect the *frequency* of instances where *other dealers* purchased or sold counterfeit parts. Allen Interchange has failed to carry its burden of showing the relevancy of the requested documents to justify the expansive scope of the discovery.

Accordingly, the Court denies Allen Interchange's motion to compel (Dkt. No. 189) as to this document request.

> l.   *Trademark Rights Documents & Dealer and Supply Agreement—Requests for Production Nos. 1 & 8*

Allen Interchange seeks agreements between Toyota USA and Toyota Japan in their entirety. Allen Interchange maintains that it needs to see these agreements in full to evaluate whether Toyota USA has sufficient interests in the trademarks at issue or other rights to provide it standing for its trademark-based Lanham Act claims. (Dkt. No. 191 at 48–49.)

Allen Interchange relies primarily on the Eleventh Circuit's decision in *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704 (11th Cir. 2019). There, the court held that, to determine if a licensing agreement affords rights and imposes obligations on the parties relating to the enforcement of any trademark claims such that the licensee's interests fall within the zone of interest protected by the Lanham Act, the court would "construe the agreement as a whole." *Id.* at 709. But, as the court also noted, this is

a basic principle of contract interpretation that courts always "fall back on" when interpreting a contract. *See id.* It does not offer any special justification to require the disclosure of the entire highly sensitive agreements at issue.

Here, Toyota has agreed to remove redactions from a number of contract provisions—many of which are highlighted in Allen Interchange's motion. But instead of reviewing these provisions for their sufficiency, Allen Interchange refuses any compromise, citing only *Kroma Makeup*. For the reasons above, the Court finds Allen Interchange's position unpersuasive and, thus, denies its motion to compel (Dkt. No. 189) as to these document requests.

3.     <u>Toyota's Motion to Compel Further Responses from Allen Interchange (Dkt. No. 123)</u>

     a.     *Supply Sources—Interrogatory No. 6 & Requests for Production Nos. 2, 3, 6, 8*

Toyota seeks the identity, and other related transactional information, of the sources from which Allen Interchange purchases or receives Toyota parts. Allen Interchange objects to this discovery as irrelevant, disproportionate, and seeking highly confidential commercial information. (Dkt. No. 130 at 13–14.)

Allen Interchange does not challenge Toyota's position that it needs this information to establish that the goods sold by Allen Interchange were not intended to be sold in the U.S. Allen Interchange argues, however, that because it has admitted that it bought the goods outside the U.S. and imports them into the country, Toyota could prove this element through its own contractual or other evidence. The Court fails to follow this logic. *Cf. Monahan Prods. LLC v. Sam's E., Inc.*, 463 F. Supp. 3d 128, 140 (D. Mass. 2020) ("A

'substantial variance in quality control' constitutes a material difference."). But in any event, "a party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory." 8 Wright & Miller, Federal Practice and Procedure § 2001 (3d ed.) (updated Apr. 2022); *accord Sentis Grp., Inc. v. Shell Oil Co.*, 763 F3d 919, 925 (8th Cir. 2014) (The responding party does not "possess the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case."). The Court finds that Toyota has demonstrated the need for the identity of Allen Interchange's suppliers—but not other related information.

Accordingly, the Court grants Toyota's motion to compel (Dkt. No. 123) as to Request for Production No. 2 and denies the motion as to the remaining requests—*i.e.*, Interrogatory No. 6 and Requests for Production Nos. 3, 6, and 8.

> b.   *Distribution Channels—Requests for Production Nos. 11, 18, 29*

Toyota seeks documents sufficient to identify the *who*, *what*, and *how* of all channels, either wholesale or retail, through which Allen Interchange distributes Toyota parts. Such information is relevant to its claims and defenses for the same reasons discussed above as to information relating to Allen Interchange's suppliers.

However, the Court agrees with Allen Interchange that these document requests appear overly burdensome on their face as the same information can be (and perhaps already has been) obtained from a short interrogatory.

Accordingly, the Court denies Toyota's motion to compel (Dkt. No. 123) as to these document requests, but will allow Toyota to serve one additional interrogatory, limited to

asking Allen Interchange to identify the *who*, *what*, and *how* of its channels for distributing Toyota parts.

                c.       *Correspondence with Other Manufacturers—Requests for Production Nos. 32–34*

Toyota seeks all communications between Allen Interchange and any original equipment manufacturers of motor vehicle parts or accessories.

Toyota provides two justifications for this discovery. First, it argues that the requested communications would be relevant to Allen Interchange's laches defense in that they would show unclean hands on Allen Interchange's part. This argument is not persuasive. Allen Interchange's communications with other original equipment manufacturers of non-Toyota motor vehicle parts or accessories are not relevant to Toyota's allegation that Allen Interchange has unclean hands vis-à-vis Toyota. *See, e.g.*, *Dream Games of Ariz., Inc. v. P.C. Onsite*, 561 F.3d 983, 990 (9th Cir. 2009) (The unclean-hands defense is an equitable defense available where the plaintiff engages in wrongful conduct that "in some measure affect[s] the equitable relations between the parties in respect to [the claims] brought before the court for adjudication.").

Second, Toyota maintains that the requested communications go to Allen Interchange's mental state in that they would show whether Allen Interchange has been put on notice that its actions are improper. The Court agrees that the communications would be relevant for this purpose. *See also* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment (one of the "examples of information that, suitably focused, would be relevant to the parties' claims or defenses" is "other incidents of the same type"). Allen

Interchange's argument to the contrary—on the premise that "[o]ne party's accusation is not evidence of the other's misconduct" (Dkt. No. 130 at 32)—does not undermine this rationale.

Accordingly, the Court grants Toyota's motion to compel (Dkt. No. 123) as to Request for Production No. 32.

> **d.**   *Identity of Non-Toyota Parts— Interrogatories Nos. 12 & 13*

Toyota seeks the identity of all non-Toyota parts that Allen Interchange has sold and monthly sales and gross profits for those parts.[4] Toyota maintains that, because Allen Interchange asserts that Toyota has sought to drive it out of business, this information is relevant: "It is possible that [Allen Interchange] replaced any alleged lost business in the Toyota parts market with sales of other products." (Dkt. No. 125 at 19.)

This afterthought is speculative and insufficient to justify the scope of discovery at issue. Part-level costs and sales of *non-Toyota* parts are not relevant to the concern Toyota asserts. The Court thus denies Toyota's motion to compel (Dkt. No. 123) as to these interrogatories.

> **e.**   *Warranty Versus Non-Warranty Repair Distinction— Interrogatory No. 15*

Toyota seeks to understand how to determine whether a Toyota part sold by Allen Interchange has been used for warranty repairs or non-warranty repairs. This information

---

[4]   The requests, as written, encompass both Toyota and non-Toyota parts. But because Allen Interchange does not object to providing sales and unit costs for *Toyota* parts (Dkt. No. 130 at 33), at issue are only non-Toyota parts.

is to help it better understand Allen Interchange's definition of relevant product market, which is currently defined as "the dealer market for Toyota Captive Parts for Non-Warranty Repairs in the geographic area of [Toyota's Primary Market Area]." (Dkt. No. 125 at 19.)

In response, "Allen Interchange states that its purchasers know from whom they purchased the parts that they subsequently use in performing repairs." (Dkt. No. 130 at 35.) Because these purchasers are dealers who must know who supplied them the parts that they subsequently use in performing repairs, Allen Interchange argues, it has adequately answered the interrogatory. (*Id.* at 36.) The Court agrees, as it appears there is nothing to compel here.

Accordingly, the Court denies Toyota's motion to compel (Dkt. No. 123) as to this interrogatory.

**B.   Toyota's Motion for De-Designation of Attorneys'-Eyes-Only Document (Dkt. No. 141)**

Toyota seeks removal of the Attorney's Eyes Only ("AEO") designation from portions of a document, namely AIC_0000245, produced by Allen Interchange, which lists the price, cost, and quantity sold of Toyota parts that Allen Interchange has sold since 2017. (Dkt. No. 161 at 5.) This document thus appears to contain all the Gray Market Parts sold by Allen Interchange. (*Id.*)

Under the governing Protective Order, the parties may designate a document as "confidential" if it "contains confidential or proprietary information." (Dkt. No. 100 at 9.) The Protective Order also makes clear that confidential information "may be used only in this action" and may be "revealed" only by: (1) the Court and its staff; (2) an attorney or

an attorney's partner, associate, or staff; (3) a person shown on the face of the confidential document to have authored or received it; (4) a court reporter or videographer retained in connection with this action; (5) a party; and (6) any person who is retained to assist a party or attorney with this action and who signs the required declaration regarding confidentiality obligations in this case. (*Id.*) In addition, and as relevant here, the parties may also supplement the "confidential" designation with AEO, making the information unrevealable to "another party." (*Id.* at 10.) Thus, because the document at issue is designated as AEO, Toyota's counsel cannot reveal its contents to any of Toyota's employees, including its representatives for the purposes of this action.

In deciding whether to order de-designation, the Court must balance the risk to Allen Interchange from any misuse of its highly confidential information against the risk that Toyota will be unable to make its case, "particularly whether other means of proof are available." *Kia Motors Am., Inc. v. Autoworks Distrib.*, No. 06-CV-0156 (DWF/JJG), 2007 WL 9412450, at *6 (D. Minn. July 3, 2007); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) ("the nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders").

The Court recognizes the highly confidential and proprietary nature of the information at issue, as previously noted. (*See generally* Dkt. No. 100.) At the same time the Court also notes that Toyota argues that the document contains the key information that forms the basis for its claims that Allen Interchange has violated the Lanham Act by selling Gray Market Parts. (Dkt. No. 161 at 5–6). The list also forms part of the basis for Allen

26

Interchange's antitrust claims, which involve Captive Parts (because all Gray Market Parts are supposedly Captive Parts). (*Id.*)

Allen Interchange asserts that Toyota's counsel can work with their client representatives to identify the list of Toyota parts that are at issue on both sides' claims, whether Gray Market Parts or Captive Parts. (*See, e.g.*, Dkt. No. 164 at 7–8 (directing Toyota's counsel to "obtain the lists that identify the captive parts used in the surveys (or just look at the surveys themselves) and compare those lists with the list of parts on AIC_0000245").) But this method does not account for how Toyota's counsel—without discussing the identities of the suspect parts with Toyota's representatives—can fully address various other key issues in this case. For example, not only does Toyota need to identify the suspect parts, it also needs to determine which suspect parts fit into which of the three categories of material differences at issue in its Lanham Act claims. This analysis would require input from client representatives.

The Court thus finds that the materiality of the information at issue outweighs the risks of potential misuse from the requested limited disclosure. Accordingly, the Court grants Toyota's motion for de-designation (Dkt. No. 141). To provide adequate protection for this highly confidential document, the Court orders Toyota to maintain a list of everyone who reviews this document. Toyota shall share the list with Allen Interchange upon the latter's request and shall destroy the document at the end of the litigation.

### C.    Allen Interchange's Notice of Corporate-Designee Deposition of TMNA

On April 5, 2024, Allen Interchange served TMNA with a notice of corporate-designee deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). (Dkt. No. 169-

1.) The notice set the deposition for April 26, 2024, and provided 11 topics for examination. (*Id.*) TMNA provided objections to the Notice in an April 19, 2024 letter. (Dkt. No. 169-2.) The parties met and conferred on April 22, 2024, but were not able to resolve TMNA's objections. (Dkt. No. 166 at 8.) TMNA did not produce a witness for the noticed deposition.

On May 17, 2024, Allen Interchange filed a motion to compel TMNA's compliance with its obligation to produce a witness for the noticed corporate-designee deposition. (Dkt. No. 164.) A week later, TMNA moved for a protective order limiting the temporal scope of certain topics noticed for the same corporate-designee deposition. (Dkt. No. 175.) The Court takes up these motions in turn.

1.     <u>Allen Interchange's Motion to Compel TMNA's Compliance with Rule 30(b)(6) Deposition Notice (Dkt. No. 164)</u>

Under Federal Rule of Civil Procedure 30, a party in litigation may, in its notice of deposition, "name as the deponent a public or private corporation . . . or other entity." Fed. R. Civ. P. 30(b)(6). The requesting party must specify "the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "Correlatively, the responding party must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the requesting party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Id.*

28

In accordance with Federal Rule of Civil Procedure 37, a federal court has the authority to compel discovery, including appearance for a corporate-designee deposition under Rule 30(b)(6). Fed. R. Civ. P. 37(a). The court may order sanctions if a person designated to testify fails to appear for the deposition. Such sanctions can include: (1) "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims"; (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; (3) striking pleadings; (4) dismissing the action in whole or part; (5) rendering a default judgment; and (6) treating the action as contempt of court. Fed. R. Civ. P. 37(b)(2)(A); *see also* Fed. R. Civ. P. 37(d)(3) (sanctions for a failure to appear at a deposition may include any of the sanctions that could be imposed for a violation of a court order on discovery). Rule 37 also provides that, instead of, or in addition to, those sanctions, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). The Court has discretion and inherent authority to fashion discovery sanctions. *Vanderberg v. Petco Animal Supplies Stores, Inc.*, 906 F.3d 698, 702 (8th Cir. 2018); *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 924 (8th Cir. 2014).

In this case, there was perhaps a good-faith dispute about pending discovery requests from Allen Interchange to Toyota. But there is no dispute that TMNA failed to attend a noticed deposition, and there is no dispute that TMNA had not filed a motion for

a protective order. Regardless of whether TMNA reasonably believed it should not have to produce a witness on the date noticed by Allen Interchange, Rule 37 provides that a failure to appear is not excused on the ground that the discovery sought was objectionable unless the party files a motion for a protective order, which neither TMNA nor TMS did before the date on which the deposition had been noticed. *See* Fed. R. Civ. P. 37(d)(2). The Court thus finds that TMNA failed to comply with its discovery obligations and that the proper sanction is payment of the costs and expenses in conjunction with the attempted deposition. These include court reporter's fees, videographer's fees, and travel expenses.

Allen Interchange may take a corporate-designee deposition of TMNA. The deposition shall occur in the offices of Allen Interchange's counsel in Minneapolis, Minnesota (as originally noticed), and all costs incurred in connection with the deposition (including but not limited to the court reporter, videographer, and the travel expenses of the witness or witnesses) will be borne by TMNA.

> 2. Toyota's Motion for Protective Order Limiting the Temporal Scope of the Deposition (Dkt. No. 175)

Toyota also moved for a protective order to limit the temporal scope for the topics of TMNA's corporate-designee deposition. (Dkt. No. 175.)

At the hearing on the motion, held on June 6, 2024, the Court ordered the parties to meet and confer further in an effort to see which deposition topics they could agree on and whether responsive documents needed to be produced going back to 2017 or all the way back to 2012. (Dkt. No. 206.) By a joint letter, dated June 27, 2024, the parties have advised

the Court that they were able to resolve all of the issues on this motion. Accordingly, the motion (Dkt. No. 175) is denied as moot.

## IV.   ORDER

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.   Allen Interchange LLC's Motion to Compel (Dkt. No. 116) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order;

2.   Toyota Motor Sales, U.S.A., Inc., and Toyota Motor North America, Inc.'s Motion to Compel (Dkt. No. 123) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order;

3.   Toyota Motor Sales, U.S.A., Inc., and Toyota Motor North America, Inc.'s Motion for De-Designation (Dkt. No. 141) is **GRANTED**;

4.   Allen Interchange LLC's Motion to Compel (Dkt. No. 164) is **GRANTED**;

5.   Toyota Motor North America, Inc.'s Motion for Protective Order (Dkt. No. 175) is **DENIED AS MOOT**; and

6.   Allen Interchange LLC's Motion to Compel (Dkt. No. 189) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

Date: August 1, 2024                    *s/ John F. Docherty*
                                        JOHN F. DOCHERTY
                                        United States Magistrate Judge