UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | Case No. 22-cv-1681 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Allen Interchange LLC, Does 1-10, | |
| Defendants. | |
| Allen Interchange LLC, | |
| Counter Claimant, | |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., | |
| Counter Defendant. | |

This matter is before the Court on Toyota Motor North America, Inc. and Toyota Motor Sales, U.S.A., Inc.'s (collectively, "Toyota") Motion to Compel (Dkt. No. 538). The Court heard oral argument on the motion on August 6, 2025 and granted the motion in part at that hearing. Issues still outstanding from that hearing include Toyota's Motion to Compel Allen Interchange, Inc. ("Allen") to produce the following discovery: 1) "Allen's full set of Amazon and eBay listings of its Toyota-Branded Parts;" 2) "documents related to Allen's policies, procedures, or practices related to or concerning selling, packaging, and/or shipping of Toyota-Branded Parts, including quality control mechanisms" and 3) "documents related to the misstatements Allen claims Toyota made as to Allen's packaging

1

in response to RFPs 85 and 87." (Toyota Mot. 2, Dkt. No. 538.) The Court has written extensively on the disputes between the parties and will limit its recitation of the facts and law to only that necessary to decide the issues presented in the motion.

## I. E-Commerce Site Listings (RFP 9)

Toyota asks the Court to order Allen to produce all of Allen's Amazon and eBay "listings" of Toyota-branded parts. Almost all of the argument in the hearing focused on the inner machinations of the Amazon e-commerce platform. The parties disagree on the definition of "listing" as it applies to products sold through Amazon, and even if they agreed on that definition, Allen argues that Amazon listings are not in its "possession, custody, or control" as required by Federal Rule of Civil Procedure 34(a)(1) for them to be discoverable. Generally,

> [p]arties may obtain discovery regarding any nonprivileged matter that is ***relevant to any party's claim or defense*** and ***proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the ***parties' relative access to relevant information***, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). The Court distinguishes between a consumer-facing listing and a seller-facing listing and concludes that Allen must produce a record of seller-facing listings within the relevant period because production of those listings is relevant to the claims and defenses in this case, proportional to any potential burden on Allen, and is reasonably within Allen's control.

This outcome is dependent on an understanding of the complexities of Amazon's e-commerce platform. The Court's discussion is not a comprehensive description of that

2

platform. It is limited to the issue in front of it and for the most part is not based on a description by a neutral outsider but on the parties' arguments, which often conflict.

When a seller offers an item for sale that is simultaneously being offered for sale by another party, the seller has the option to 1) make a "bid" on that existing posting; or 2) create a new posting. *See* Katherine Haan & Cassie Bottroff, *How to Sell on Amazon: 2025 Guide*, Forbes, https://www.forbes.com/advisor/business/how-to-sell-on-amazon/ (last visited Aug. 25, 2025). When a seller chooses the first option, the seller selects an existing post, identified by an Amazon-assigned Amazon Standard Identification Number ("ASIN"). (Allen's Mem. in Opp. 13, Dkt. No. 550; Aug. 6, 2025 Hr'g Tr. 32:2–7.) That post was originally created by the first seller to offer the product and subsequently may be edited by Amazon when multiple sellers bid under the same ASIN. Sellers may change their bids (or the prices for which they seek to sell a product under the ASIN), and while sellers may provide Amazon with feedback on what is presented on the product page, it is the Court's understanding that Amazon ultimately curates the product descriptions associated with ASINs for which multiple sellers have made offers to sell. (*See* Aug. 6, 2025 Hr'g Tr. 49:10–18.) For an ASIN product page where multiple sellers have made a bid, consumers see a single page, an example of which is shown below.



From that page, consumers may purchase the item by selecting "Add to Cart" (the yellow icon at the right side of the above image) or "Buy Now" (the orange icon on the right side of the image) on that product page, which will initiate a purchase from one of the sellers, determined by Amazon. Consumers may also choose to select the seller from whom they purchase the product, by selecting "Other sellers on Amazon" under the "Add to Cart" and "Buy Now" icons. When "Other sellers on Amazon" is selected, a sub-menu appears listing all sellers offering that product, the condition of the specific product being sold by each seller (New, Used, etc.), the name of the seller and shipper, the price for the item offered by each seller, a seller rating, and the cost of shipping that item to the buyer. From this menu, a consumer may press "Add to Cart" to select a specific item from a specific seller. If, when deciding to offer a product for sale on Amazon, the seller chooses to make a new product page with a new ASIN, the seller creates and controls the product page and

item description unless a new seller seeks to offer the same product on the same ASIN and that seller requests a change to the product page. That request is granted or denied by Amazon in Amazon's discretion. These ASIN-by-ASIN product pages are what the Court refers to as consumer-facing listings.

Less information is publicly available about the seller-facing listing system and its operations are disputed by the parties. In order to find that at least some of this information is discoverable, the Court need not make specific determinations about which party's description is more factually accurate. Toyota's counsel made a persuasive argument that Amazon sellers have access to a page on their seller account called "Manage All Inventory," which allows sellers to "review and edit even closed listings, even inactive listings, and they can certainly see their active listings." (Aug. 6, 2025 Hr'g Tr. 18:14–25, Dkt. No. 569.) The "Manage All Inventory" page described by Toyota is clearly within Allen's possession, custody, or control because it is accessible only by logging into Allen's seller account, or perhaps, on the backend of the page by Amazon itself. As between the two parties to this case, however, Allen has far easier access to this information, and, by Toyota's explanation, the burden of producing that page, in searchable and clickable document format, is minimal. All that is required is for Allen to log into its seller account, find the "Manage All Inventory" page, and download the page as a PDF document.[1] If

---

[1] Allen did not contest this description of the "Manage All Inventory" page. Allen argued that, for ASINs which it previously sold parts but no longer does, links on the "Manage All Inventory" page would lead to customer-facing listings that may have changed since Allen ceased selling that part, (see Aug. 6, 2025 Hr'g Tr. 35:14–38:4, Dkt. No. 569). Allen's concern was that such listings could confuse the jury. The concern is premature. Whether

necessary, Allen may redact or otherwise exclude parts it sells that are not Toyota or Lexus parts. These documents meet the threshold set by Federal Rule of Civil Procedure 26(b)(1) of relevance to Toyota's claims that Allen falsely represented the parts it sold through e-commerce platforms to consumers, regardless of the larger question of whether and to what extent Allen or Amazon controlled the information displayed to customers on the consumer-facing product pages.

Federal Rule of Civil Procedure Rule 34(a)(1) states that parties need only produce documents that are in their "possession, custody, or control." Allen says, and the Court agrees, that consumer-facing listings are not in the control of Allen because Amazon's involvement is too great. Therefore, Allen need not produce consumer-facing listings. However, Allen's (including its various subsidiaries and trade names) seller-facing "Manage All Inventory" page is discoverable. While Rule 34(a)(1) only requires parties to produce documents that are in that party's "possession, custody, or control," Rule 26(b)(1) requires the Court to assess the "parties' relative access to relevant information" in deciding the scope of discovery. On that question, Allen undoubtedly has greater access than Toyota, because Allen can access the page by simply logging into its seller account.

To the extent a seller-facing feature similar to "Manage All Inventory" exists for the eBay platform, Allen is ordered to produce it in the same format and for the same reasons as discussed above. Allen must produce seller-facing information from these e-commerce platforms that is responsive to RFP 9. This production is to include lists of the Toyota-

---

such listings should be presented to a jury is an evidentiary question, not one to be answered in a discovery dispute.

branded products that Allen has sold on Amazon and eBay, whether or not those listings can currently be viewed by consumers. Those lists, where possible, are to be produced in a format that is both searchable and clickable, such that Toyota can follow links in the list to consumer-facing product pages.

II. **Documents Related to Allen's Shipping and Quality Control Policies, Practices, and Procedures (RFPs 23, 24, 85, and 87)**

Toyota moves the Court to compel Allen to produce documents responsive to RFPs 23 and 24, which request Allen's "policies, procedures, or practices" (RFP No. 23) and "quality control mechanisms" (RFP No. 24) regarding its "selling, packaging, and/or shipping" of Toyota parts. (Toyota's Mem. in Supp. 17–18, Dkt. No. 540.) Toyota also seeks documents responsive to RFPs 85 and 87, which request documents "showing any packaging, packing, labeling, or preparation for shipping of orders" of Toyota parts (RFP 85) and "[r]ecordings and photos of the inside of your principle [sic] place of business sufficient to show YOUR packaging and shipping procedures and the application of any packaging or shipping policies" (RFP 87).

The parties disagree about the applicability of a previous ruling of this Court to the relevance of the documents requested in these RFPs. Allen asserts that Toyota is barred from requesting these documents by the Court's Order on February 11, 2025, where it held that differences in supply chain and quality control procedures cannot, in and of themselves, be relevant to whether there are material differences between the parts sold by Allen and the parts sold through a Toyota-approved supply chain, in the context of Toyota's Lanham Act claims. (Feb. 11, 2025 Order 11, Dkt. No. 343.) That order was affirmed on

appeal by Judge Menendez. (May 28, 2025 Order, Dkt. No. 468.) Neither this Court's order nor that of Judge Menendez addressed RFPs 23 and 24 specifically. Toyota argues that the order was limited to the specific RFPs at issue on that motion and to the specific issue of whether quality control and shipping differences constituted material differences under the Lanham Act. (Toyota's Mem. in Supp. 20, Dkt. No. 540.) Toyota says that the Court has not addressed the question of whether these RFPs are relevant to Allen's counterclaims regarding alleged false statements made by Toyota that gray market parts may not meet certain quality standards. (*Id*. at 21.) The Court agrees with Toyota.

The documents Toyota seeks, specifically those reflecting Allen's "policies, procedures, or practices" (RFP 23) and "quality control mechanisms" (RFP 24) "related to or concerning selling, packaging, and/or shipping" of Toyota parts, are relevant to Allen's counterclaim that Toyota made a false and misleading statement that the "condition of grey market parts may not meet the high standard that Toyota customers expect" and Allen's factual contention that "Allen ships Toyota Parts in the same condition and individual packaging as supplied by or for Toyota." (Second Am. Countercl. ¶ 138, Dkt. No. 362.) Toyota is entitled to test the assertions Allen makes about its shipping practices because that issue is relevant to Allen's counterclaim that Toyota made false and misleading statements about Allen. To the extent these documents exist, they are also proportional to the needs of the case because alleged false statements by Toyota about the nature and quality of gray market parts are a significant aspect of Allen's counterclaim. To defeat that counterclaim, Toyota must prove that the statements it made were not false, something it cannot do without evidence of Allen's quality control mechanisms and selling,

8

packaging, and shipping practices. Accordingly, Toyota has shown that the documents sought in RFPs 23 and 24 fall within the general scope of discovery identified by Federal Rule of Civil Procedure 26(b)(1).

As to RFP No. 85, the Court finds that many of the documents the RFPs seek will likely be duplicative of what the Court is ordering to be produced in response to RFPs 23 and 24. Nevertheless, the documents requested by RFP No. 85 are, to a degree, relevant and produceable with minimal burden. Among those documents that are relevant are those that show actions taken by Allen after it received the parts in question from their suppliers. The Court orders Allen to produce documents responsive to RFP 85, subject to the following limitations: 1) Allen need not reproduce documents it produced in response to other RFPs; 2) Allen need only produce documents showing packaging, packing, labeling, or preparation for shipping of orders of Toyota parts that *Allen itself* added to or altered while the parts were in Allen's control; and 3) Allen is not required to produce documentation of actions related to packaging, packing, labeling, or preparation for shipping that were taken by suppliers or other entities not associated with Allen before Allen took possession of them.

RFP 87 seeks something more akin to a virtual facilities inspection, rather than a request for production of documents, requiring the production of new documents, photographs, or videos. The Court has already ruled that a facilities inspection will not take place, (*see* Feb. 11, 2025 Order 17–18, Dkt. No. 343) and there is no reason to reconsider that decision. Ordering Allen to produce the documents requested in RFP 87 would be overly burdensome for both Allen and the Court because doing so would require Allen to

make recordings and photographs of its facilities and products. Doing so would almost certainly require the scheduling order to be extended, something the Court is loath to allow, given that this case is now in its fourth year of litigation. Toyota's motion is denied as to RFP 87, as any response would be unnecessarily duplicative or require creation of new recordings and photographs.

To be clear, Allen must produce documents responsive to RFPs 23 and 24 that show evidence of *Allen's* activities related to the parts they sell. The RFPs request "documents sufficient to identify [] *defendant's* policies, procedures, or practices" (RFP 23 (emphasis added)) and "*defendant's* quality control mechanisms." (RFP 24 (emphasis added)). They do not request documents related to Allen's suppliers' actions or policies. Under multiple orders from this Court, supplier information remains undiscoverable without an adequate additional showing of necessity.  (*See* Feb. 11, 2025 Order 12, Dkt. No. 343 (explaining that the August 1, 2024 Order "set the suppliers' identities as the outer limit on the information discoverable about the suppliers without an adequate additional showing of necessity").)

The Court's decision here is limited to these specific RFPs, which are likely to produce relevant information as to Allen's counterclaims regarding alleged false statements by Toyota and is fully compatible with past orders.

## CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Toyota's Motion to Compel (Dkt. No. 538) is **GRANTED in part and DENIED in part.**

Date: October 6, 2025

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge