## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | Case No. 22-cv-1681 (KMM/JFD) |
| Plaintiff, | |
| v. | |
| Allen Interchange LLC, Does 1-10, | **ORDER** |
| Defendants. | |
| Allen Interchange LLC, | |
| Counter Claimant, | |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., | |
| Counter Defendant. | |

This matter is before the Court on Toyota Motor Sales, U.S.A., Inc.'s ("Toyota") Motion to Compel (Dkt. No. 661), filed on October 1, 2025. The Court heard oral argument on the motion on October 23, 2025 and took the motion under advisement as of the end of the hearing. (*See* Oct. 23, 2025 Minute Entry, Dkt. No. 697.) The Court has written extensively on the disputes between the parties and will limit its recitation of the facts and applicable law to that necessary to decide the issues presented in the motion. In its Motion, Toyota asks the Court to compel Allen to produce certain discovery. At the October 23 hearing Toyota narrowed its motion, stating that it was no longer seeking an order compelling responses to its Requests for Production ("RFPs") numbers 80, 85, 90, or 95,

1

and that it has reserved its motion for inspection of Allen's e-commerce accounts, pending review of previously ordered discovery. (Oct. 23, 2025 Hr'g Tr. 107:17–108:12, Dkt. No. 714.) The Court considers the motion as to those requests withdrawn. Toyota persists in its motion as to RFPs 91 and 92, Interrogatories 38–40, and an issue regarding Allen's assertion of privilege over certain metadata associated with produced files.

## I.   Requests for Production and Interrogatories

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts consider numerous factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party believes that an opposing party has failed to respond to discovery, or has served insufficient responses, it may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). A court may compel responses if a party fails to answer an interrogatory propounded under Rule 33, or to produce documents requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(ii)–(iv). For purposes of such a motion, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

A proper discovery response must either answer the request fully or state with specificity the grounds for objecting to the request. *See* Fed. R. Civ. P. 33(b), 34(b)(2). Objections must be stated with specificity and in relation to specific requests; any ground "not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012). The party seeking discovery bears the initial responsibility for making a threshold showing of relevancy before the production of information is required. *See, e.g.*, *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Courts generally have wide discretion in granting or denying discovery requests." *Reese v. Sherburne Cnty. Det. Ctr.*, No. 0:19-CV-1975 (ECT/KMM), 2021 WL 1723780, at *1 (D. Minn. Mar. 16, 2021) (citing *Robinson v. Potter*, 453 F.3d 990, 994–95 (8th Cir. 2006); *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000)).

### A. RFP 91: The 'Jim Folder'

In a deposition, an Allen employee testified that relevant documents had been kept by a former employee whose name was "Jim." When Jim left Allen's employment, the company maintained the documents he kept in a folder, aptly named "the Jim Folder." After that deposition, wanting to know what information might exist in the 'Jim Folder,' Toyota requested "The Jim Folder" in RFP No. 91 (Toyota's Mem. in Supp. 6, Dkt. No. 663.) Allen's somewhat shocking response was as follows:

> Allen Interchange objects to this request as being so vague that it [is] impossible to determine what is sought. Plaintiff's definition of the "Jim Folder" is a location and not a document: "the electronic and/or hard copy file referred to by Bruce Enkhaus at his May 14, 2025, deposition at 246:8-247:10."

3

(*Id.*) In other words, Allen originally objected to the RFP because, when it was asked for a folder, it could not tell whether it was being asked for the folder or the contents of the folder. Asserting that such a distinction makes the request "so vague that it [is] impossible to determine what is sought" is ridiculous. Anyone reading the request would immediately understand that Toyota wanted the contents of the folder, not the folder that held those contents. Allen's response triggered *federal court litigation* in which teams of opposing lawyers, like so many medieval alchemists, marshaled arguments and textual analyses for and against a question whose answer was obvious on its face.

Perhaps realizing how untenable its objection was, Allen, in later briefing, offered a different and much more supportable rationale, saying it had produced any documents from the Jim Folder that were responsive to other discovery requests, pointed out that many of the remaining documents in the Jim Folder were not relevant to this case (photographs of forklifts, for example), and criticized Toyota for not specifying which documents from the Jim Folder it sought.  (*See* Allen's Mem. in Opp. 11, Dkt. No. 673.)[1]

There is no need to mince words. Allen's original position was absurd, and its later effort at damage control by proffering a more defensible rationale for the objection was too little, too late. The reason this dispute was litigated at all was Allen's original response to the RFP. That original response caused both parties to expend resources in addressing the

---

[1] In the introductory section of its Memorandum in Opposition, however, Allen repeated its assertion that Toyota's Request No. 91 is improper because "it does not describe any documents it seeks," but "merely points to a location." (Allen's Mem. in Opp. 4, Dkt. No. 673.) The Court stands by its characterization that it is ridiculous to claim that a request is too vague to be understood because it does not specify whether the requester wants what is in a file or the file itself.

4

dispute and wasted the Court's time. Once the original objection was made, the damage was done. That Allen later thought of more defensible support for its motion does not change that fact. If the parties wonder why the Court's tone in this case is becoming increasingly acerbic, they need look no further than the disputes of this type that are all too frequent in this case.

The Court must now decide what to do with this dispute, which was spurred by an entirely inappropriate objection but has since been joined, *post hoc*, by more colorable argument. At the risk of rewarding bad behavior, the Court finds that Allen's production of Jim Folder documents that are responsive to other discovery requests was correct. To be certain that all responsive documents have been produced, the Court orders Allen to disclose *any* documents in the Jim Folder that are responsive to *any* discovery request from Toyota that has, to this point, been uncontested or validated by court order, subject to appropriate assertions of privilege.

## B. RFP 92: Warranty Letters to Dealer Customers

This RFP seeks "[a]ll letter notices allegedly sent [by Allen] 'with the first shipment' to each Toyota Dealer that purchases Toyota Branded Parts in the year." (Toyota's Mem. in Supp. 8, Dkt. No. 663.) It references Allen's response to Interrogatory No. 17, in which Allen states that "for each dealer…, with the first shipment to that customer in the year, a letter notice is included that notifies the customer about Allen Interchange's Replacement Parts Warranty and requests the dealers to make their customers aware of it." (*Id*.) Allen says that it has produced a form letter, which it says was sent as described in its

5

interrogatory response, but it does not have each individual letter sent to dealer customers. (Allen's Mem. in Opp. 12, Dkt. No. 673.)

In its November 24, 2025 Order, the Court said, "Toyota stated that it does not have documents reflecting the text of the pop-up notices themselves. For the purposes of determining the sufficiency of an interrogatory response, the Court and Allen must accept that to be true." (Nov. 26, 2025 Order 8, Dkt. No. 758.) The same is true here, where Allen has stated that it has produced all existing responsive documents. Like Allen's interrogatories addressed in that order, the Court and Toyota must accept Allen's claim that it has produced everything there is to produce in response to RFP 92. Accordingly, Toyota's Motion to Compel a further response to RFP 92 is denied.

## C. Interrogatory 38

Interrogatory 38 seeks "all documents [Allen] used, referenced, reviewed, or consulted in the creation of" a spreadsheet purportedly showing Allen's parts sales. (Toyota Mem. in Supp. 11, Dkt. No. 663.) Allen's chief argument in opposition is that no such documents exist because the spreadsheet was made by querying an internal Allen database by Mr. Mike Wilber, an Allen employee. (Allen's Mem. in Opp. 15, Dkt. No. 673.) Allen has proposed that Toyota address its concerns about the spreadsheet and its creation in Mr. Wilber's upcoming deposition. For the same reasons as discussed above, the Court will not order Allen to produce documents that do not exist. However, Mr. Wilber's process in creating the spreadsheet is relevant and proportional to the needs of the case, and Toyota may address its concerns about the spreadsheet in his deposition. Toyota's Motion to

Compel a response to the specific interrogatory propounded is denied, but the topic is well within the bounds of discoverability in Mr. Wilber's deposition.

**D. Interrogatories 39 & 40**

These interrogatories seek sales information and warranty communications regarding non-Toyota parts sold by Allen, both to Original Equipment Manufacturer ("OEM") (*e.g.*, Toyota, Kia, Subaru, Ford, Volkswagen, etc.) dealers and to consumers on e-commerce platforms. Toyota argues that non-Toyota parts sales are relevant to address Allen's allegations that it experienced a decrease of Toyota parts sales because of Toyota's allegedly anti-competitive actions and Toyota's allegations that Allen continues to make misrepresentations about Allen's warranty. (Toyota's Mem. in Supp. 12, 15, Dkt. No. 663.) Allen argues that this case is about Toyota parts only and cites the Court's August 1, 2024 Order to support that conclusion. (Allen's Mem. in Supp. 16, Dkt. No. 673.) In that order, the Court held that "Allen Interchange's communications with other original equipment manufacturers of non-Toyota motor vehicle parts or accessories are not relevant to Toyota's allegation that Allen Interchange has unclean hands vis-à-vis Toyota" and that "[p]art-level costs and sales of non-Toyota parts are not relevant to the concern Toyota asserts." (Aug. 1. 2024 Order 23, Dkt. No. 224; *id*. at 24.)

At this late stage in discovery, there is no reason for the Court to revisit its conclusion that discovery regarding non-Toyota parts sales is not relevant to this case. However, Interrogatory 40 seeks responses detailing how Allen communicates information about its warranty to e-commerce customers. The Court has already held that Allen's warranties are relevant to this case because a material difference between the parties'

7

respective warranties is relevant to Toyota's Lanham Act claims. (*See* Feb. 11, 2025 Order 9, Dkt. No. 343.) The Court has also allowed discovery into how Allen communicates its warranty to dealer customers. This conclusion extends to Toyota parts sold on e-commerce platforms. Accordingly, Toyota's Motion to Compel as to these interrogatories is granted to the extent it seeks information regarding how Allen communicates its warranty to e-commerce customers who buy Toyota parts but is denied as to other OEMs' parts.

## II.    Privilege Assertion over Specific Metadata

The final issue to be addressed in this order regards assertions of privilege over metadata by Allen because the file or subfolder names reveal privileged information. (*See* Allen's Mem. in Opp. 35, Dkt. No. 673.) Toyota argues that the metadata cannot be privileged because metadata is not a communication between Allen and its counsel nor is it attorney work product. At the hearing, Toyota's counsel, Mr. Smith, argued that he did not "understand how the file path can be privileged unless someone, you know labeled their file something like, 'My lawyer told me XYZ'." (Oct. 23, 2025 Hr'g Tr. 118:7–9, Dkt. No. 714.) In response, Allen's counsel, Mr. Nelson, stated, "I mean, that's not literally what these folders were, but that's what happened." (*Id*. at 123:23–25.) The Court ordered Allen to provide the metadata to the Court for *in camera* review, which it did on November 3, 2025. After reviewing the metadata and without disclosing its contents, the Court concurs with Allen's characterization. The file folder names, put on by Allen employees, not by counsel, are of the form "here are the documents the lawyers told me to collect about XYZ." After its *in camera* review, the Court concludes that the specific metadata at issue is

privileged, even under Mr. Smith's characterization, and need not be disclosed. If the metadata has not previously been entered on the privilege log, though, it must be.

## CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Toyota's Motion to Compel (Dkt. No. 661) is **GRANTED in part and DENIED in part** as set forth above.


Date: December 4, 2025                    *s/ John F. Docherty*
                                          JOHN F. DOCHERTY
                                          United States Magistrate Judge