UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Toyota Motor Sales, U.S.A., Inc., | Case No. 22-cv-1681 (KMM/JFD) |
| Plaintiff, | |
| v. | **ORDER** |
| Allen Interchange LLC, Does 1-10, | |
| Defendants. | |
| Allen Interchange LLC, | |
| Counter Claimant, | |
| v. | |
| Toyota Motor Sales, U.S.A., Inc., | |
| Counter Defendant. | |

This matter is before the Court on cross-motions to Reconsider by Toyota Motor Sales, U.S.A., Inc. ("TMS") and Toyota Motor North America, Inc. ("TMNA") (collectively, "Toyota") on one side (Dkt. No. 723) and Allen Interchange LLC ("Allen") on the other (Dkt. No. 708). Both ask the Court to reconsider rulings made in earlier orders regarding the relevance of discovery into Allen's supply chain, in light of Judge Menendez's (the District Judge assigned to this case) September 30, 2025 Order Denying Allen's Motion to Dismiss (Dkt. No. 643). The parties' have also filed cross-motions regarding the case schedule (Dkt. Nos. 671 and 715). The Court heard oral argument on the motions on November 12, 2025 and took them under advisement at that time. (*See* Nov.

1

12, 2025 Minute Entry, Dkt. No. 748.) The Court has written extensively on the disputes between the parties and will limit its recitation of the facts and applicable law to that necessary to decide the issues presented in the motion.

As a preliminary matter, each of the orders which the parties ask the Court to reconsider, those at Docket Numbers 224, 343, and 549 (the "Subject Orders"), were objected to by at least one party and affirmed by Judge Menendez. This Court does not have the authority to overrule or reconsider her decisions but recognizes that Judge Menendez's September 30 Order constitutes a material change in the circumstances of the litigation, such that information barred by previous orders may now be discoverable. Accordingly, the Court interprets these two motions as renewed motions to compel the information barred by the Subject Orders, rather than motions to reconsider. The Court appreciates that this decision changes the standard by which the motions will be reviewed, lowering the burden for both parties significantly. Given Judge Menendez's affirmance of the past orders relevant to both motions, the Court finds this to be a necessary action to take to respect her previous rulings, both on the parties' previous objections and in her September 30 Order. Because the Court considers these motions as renewed motions to compel, it will apply the standards that apply to such motions: that the discovery be relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b).

The Court's rulings in the Subject Orders were correct at the time they were made, under the then-operable pleadings. Toyota's Third Amended Complaint then changed the legal landscape of this case by explicitly alleging, for the first time, that the parts sold by Allen had not originally entered the marketplace through an "authorized first sale." (*See*

Third Am. Compl. ¶¶33, Dkt. No. 439.) The parties agree that the changes to the complaint, which survived Allen's Motion to Dismiss, impact the scope of discovery in this case. (*See* Allen's Mem. in Opp. 2, Dkt. No. 738 ("The Court should only grant the Toyota's [sic] Parties' motion to the extent the discovery sought is directed to the new black market infringement theory TMS introduced into the case with its Third Amended Complaint.").) This Order addresses only the specific requests each party asks the court to revisit in light of the Third Amended Complaint.

### I.    The Parties' Schedule-Related Motions (Dkt. Nos. 671 and 715)

The parties' respective motions as to the case schedule are denied without prejudice because the parties' motion practice (and the Court's orders in response) since each were filed have rendered them unhelpful to moving the case forward. The Court orders the parties to meet and confer about the case schedule in light of the Court's recent rulings by January 2, 2026. If the parties can come to a reasonable agreement as to a path forward, they will file a Stipulation to that effect, which the Court will enter as an Amended Pretrial Scheduling Order. If they cannot, each party will file a letter with the Court, no longer than five single-spaced pages, outlining its proposed case schedule and the basis of their disagreements by January 9, 2026. The Court will hold an in-person Case Management Conference on the case schedule on January 15, 2026 at 1:00 P.M. Until that Conference is held, the parties are not to file any new discovery motions without leave of the Court.

## II. Toyota's Motion to Reconsider (Dkt. No. 723)

Toyota's Motion asks the Court to allow certain discovery that it previously found to be irrelevant at Docket Numbers 244, 343, and 549. Specifically, it seeks an order compelling Allen to respond to the following requests for discovery: Interrogatory 6 and Requests for Productions ("RFPs") 2, 3, 6, 8, 63, 64, and 73–75. (Toyota's Mem. in Supp. 7–8, Dkt. No. 725.) Because the Court considers this a new Motion to Compel responses to the requested discovery, the Court addresses the motion by analyzing the original requests at issue, not by examining the court order which a party asks the Court to reconsider. Using this approach, the question before the Court on each of these requests is whether, in the context of all the discovery already produced in this case and in light of Judge Menendez's September 30, 2025 Order, the requested discovery is relevant to the claims or defenses and proportional to the needs of this case. *See* Fed R. Civ. P. 26(b).

### A. Interrogatory No. 6 and RFPs 2, 3, 6, and 8

In August of 2024, the Court held that "Toyota has demonstrated the need for the identity of Allen Interchange's suppliers—but not other related information," and from that finding, found information responsive to RFP No. 2 to be discoverable,[1] but not information responsive to Interrogatory No. 6 or RFPs 3, 6, and 8.

Interrogatory No. 6 asks Allen to identify the date of purchase and the identity of the person from whom it purchased the Toyota parts it sells. (Feb. 2, 2024 Sear Decl., Ex.

---

[1] Toyota's motion to compel a response to RFP No. 2 was granted in the August 1, 2024 Order, and Allen has provided a list of its suppliers. (Allen's Mem. in Opp. 17, Dkt. No. 738.) There is nothing left for Allen to do to respond to this RFP, so Toyota's Motion is denied as to RFP No. 2.

4

4 at 4, Dkt. No. 127-1.) Allen has provided a list of its suppliers, but that list does not provide information as to which parts were sourced from which supplier. (Toyota's Mem. in Supp. 11, Dkt. No. 725.) Allen has also provided a list of the Toyota parts it has sold. The Court denies Toyota's motion as to Interrogatory No. 6. Even if granted in full, the information received in response to Interrogatory No. 6 would not move the parties any closer to learning by whom the part was <u>first</u> sold.[2]

The sale to Allen could not have been a first authorized sale unless Allen purchased the parts from TMS, the only party authorized to sell Toyota parts in the continental United States. The supply chain that Allen alleges exists here consists of multiple buyers and sellers. In it, an authorized Toyota entity sells parts to Company X, which sells to Company Y, and so on, until someone sells the part to the last purchaser before Allen – call it Company Z—which sells the part to Allen. Interrogatory No. 6 is about the relationship between Company Z and Allen, which tells the parties nothing about the alleged sale from the authorized Toyota entity to Company X. Toyota has a list of Allen's suppliers and the Toyota parts Allen sells. This is enough to respond to Interrogatory No. 6 at this stage in the litigation because Toyota has not shown why specific parts must be connected to specific suppliers and why that connection is relevant to its new allegations that Allen's parts are not subject to a first authorized sale.

---

[2] Unless, that is, Toyota intends to subpoena the person identified as having sold the part to Allen to learn from whom Allen's direct supplier bought the part, then subpoena that newly-discovered supplier to learn who they bought the part from, and so on back to the person who first bought the part. This resource-intensive approach, repeated over a multitude of links in a chain of sales, is something this Court is vanishingly unlikely to find proportionate without a great deal of persuasion.

RFP No. 3 seeks all documents evidencing purchases of parts by Allen from its suppliers, (Feb. 2, 2024 Sear Decl., Ex. 2 at 3, Dkt. No. 127-1), and RFP No. 6 seeks documents showing evidence that the parts Allen sells were imported into the country. (*Id*. Ex. 2 at 4.) Finally, RFP No. 8 seeks documents showing that Allen received shipments of parts, both internationally and domestically. (*Id*. Ex. 2 at 7.) The Court grants these requests because there may be evidence in those broad categories of documents that will allow the subject parts to be tracked back to an original Toyota seller, without the need to subpoena one purchaser after another seriatim. Assuming that it would have been in Allen's best interest to ensure that the parts they purchased from their suppliers be sourced originally from a Toyota entity, the Court concludes that some agreements or purchase orders between Allen and its suppliers may be able to establish an original authorized sale by a Toyota entity. Further, documents showing when and where the parts entered the country or when or where Allen took possession of them likely would provide some insight on where those parts came from before entering the country, including the parties that shipped and received them. Accordingly, Allen must respond to RFPs 3, 6, and 8 in full, and Toyota's renewed request to allow third-party subpoenas on Allen's suppliers is denied.

### B. RFPs 63 and 64

RFPs 63 and 64 are about counterfeit parts, seeking, respectively, all communications to or from Allen about counterfeit parts and all documents Allen references in determining whether their parts are counterfeit, respectively. Toyota does not mention in its brief that these RFPs are about counterfeit parts. The Court has already

6

explained that counterfeit parts are not a subject of this case. (Feb. 11, 2025 Order 21, Dkt. No. 343.) Toyota's Third Amended Complaint does not allege that Allen sells counterfeit Toyota parts, just that Allen may sell parts that it obtained without those parts first being sold in an authorized manner by a Toyota entity. (*See* Third Am. Compl., Dkt. No. 439.) Nothing in Judge Menendez's order, which addressed Toyota's new allegation that parts sold by Allen were not subject to an authorized first sale, changes the fact that counterfeit parts are not relevant to this case. (*See id*. at 19–20, n.4.) The Court's order on February 11, 2025 regarding RFPs 63 and 64 remains in effect.

### C. RFPs 73 and 74

RFPs 73 and 74 seek documents sufficient to show the amount of money Allen has spent on advertising and the percentage of Allen's sales derived from Toyota parts. The Court did not address the substance of these requests in its July 28, 2025 Order because the focus of the motion before the Court was RFP 75 and, given the issues that needed to be resolved with the Third Amended Complaint, the Court included these RFPs when it denied the motion without prejudice. (*See* July 28, 2025 Order 6, Dkt. No. 549.) The Court now addresses those RFPs and the parties' respective arguments on Toyota's Motion to Compel at Docket Number 449.

On these RFPs, Toyota argues that Allen is being intentionally evasive and refusing to produce responsive information in bad faith. (Toyota's Mem. in Supp. 17, Dkt. No. 451.) Toyota says that the information requested is facially relevant to several issues in the case, including damages and will certainly be made available to Allen's damages expert in preparation for expert discovery. (*Id*.) Allen makes several arguments in response, saying

7

that the RFPs are unclear, that Toyota's requests seek information organized in ways that do not align with how that information is organized by Allen, and that damages are the domain of expert discovery, which, at the time of filing, was months away. (Allen's Mem. in Opp. 26–28, Dkt. No. 469.) Allen's main argument though is that Toyota's requests would require Allen to create documents because the information Toyota seeks is not currently in the form of 'documents' and is not formatted such that Allen can respond to Toyota's specific requests.

Allen's arguments are not well taken. The RFPs posed by Toyota are abundantly clear about what they seek. Allen can no longer withhold this important damages-related information from Toyota, as the parties complete fact discovery and begin expert discovery. Allen's financial information as to the Toyota parts it sells is vital to determining the extent of Allen's damages attributable to its claims against Toyota, and Toyota has a right to that information in preparing its defense. Accordingly, Toyota's Motion as to these RFPs is granted, and Allen must respond to each in full.

**D. RFP No. 75**

RFP No. 75 seeks documents from Allen showing information about its supply chain from a first authorized sale by TMC to Allen. (May 21, 2025 Sear Decl. Ex. 1 at 7, Dkt. No. 452-1.) Allen states that it has agreed to produce responsive documents that are relevant to what it calls Toyota's "black market infringement" theory but says that the RFP seeks a broader range of information, not covered by the new theory of liability. (Allen's Mem. in Opp. 10, Dkt. No. 738.) It recommends that the Court order what it has agreed to

produce, which is "documents sufficient to show the first authorized sale of the TOYOTA BRANDED PARTS supplied by each entity identified in AIC_0110824." (*Id*. at 11.)

It does not seem that Allen and Toyota disagree about this RFP, which causes the Court to be concerned that the parties' history of litigating every possible dispute has finally led them to reflexively litigate a matter that is NOT in dispute. Allen says it will provide "documents sufficient to show the first authorized sale," (*id*.) and Toyota says that the request "seeks documentation of the first authorized sale." (Toyota's Mem. in Supp. 14, Dkt. No. 725.) Accordingly, the Court grants Toyota's motion as to RFP 75. Allen must produce any documents in its possession that show the first authorized sale of the Toyota parts it sells.

### III.    Allen's Motion to Reconsider (Dkt. No. 708)

Allen's Motion asks the Court to order Toyota to produce certain discovery which was the subject of a previous motion denied by the Court as moot. (Allen's Mem. in Supp. 1–2, Dkt. No. 710; s*ee* also, Feb. 11, 2025 Order 30, Dkt. No. 343.) Allen bases its motion not on Judge Menendez's September 30, 2025 Order but on this Court's October 6, 2025 Order, which ordered Allen to produce documents showing evidence of Allen's policies, procedures, practices, and supply control mechanisms. (October 6, 2025 Order 10, Dkt. No. 670.) Allen's argument is one of fairness. It argues that if Toyota has the possibility of showing a jury evidence of damage to packaging connected to the parts Allen sells, it should have the opportunity to do the same for the parts Toyota sells, in the broader analysis of material differences between the two parties' respective parts. (Allen's Mem. in Supp. 4, Dkt. No. 710.) Allen does not believe that either party should be able to present this

9

evidence at trial, but it argues that, since Toyota has been allowed to discover this information, it should also have that opportunity. (*Id*. at 3.) As with Toyota's motion above, because the Court originally denied Allen's Motion as to these requests as moot and Judge Menendez affirmed that ruling, (s*ee* May 28, 2025 Order 8, Dkt. No. 468 (affirming Feb. 11, 2025 Order at Dkt. No. 343)), the Court considers Allen's motion not as a motion to reconsider but as a renewed motion to compel.

Allen asks the Court to require Toyota to respond to its Interrogatory No. 20 and RFP No. 81. Interrogatory 20 seeks damage and mistake rates in the parts Toyota ships to dealers in the United States, and RFP No. 81 seeks all photographs related to damage claims made to Toyota by dealers upon receipt of part shipments from Toyota. (Allen's Mem. in Supp. 10, Dkt. No. 710.) Toyota objects to this request on the basis that Allen has not met the standard required by a motion for reconsideration under Fed. R. Civ. P. 60(b) and the Eighth Circuit's case law on such motions.

Because, for the reasons given above, the Court declines to hold either party to the much higher standard for motions for reconsideration and because the Court finds that the discovery Allen seeks in Interrogatory 20 and RFP 81 has become now relevant and proportional, given the changes in the scope of discovery over recent months, Allen's motion is granted. Documentation of Toyota's damage rates and photographs of that damage are relevant for the parties to show that the damage to parts in the parties' respective processes are (or are not) comparable to one another, should such argument be allowed to proceed to the jury. The Court finds that the burden on Toyota to produce

10

responsive discovery is no greater than the burden on Allen to produce the same. Toyota will respond to Interrogatory 20 and RFP 81 in full.

## CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Toyota's Motion to Amend the Scheduling Order (Dkt. No. 671) is **DENIED without prejudice**.

2. Allen's Motion for Discovery (Dkt. No. 715) is **DENIED without prejudice**.

3. Toyota's Motion for Reconsideration (Dkt. No. 723) is **GRANTED in part and DENIED in part** as set forth above.

4. Allen's Motion for Reconsideration (Dkt. No. 708) is **GRANTED in part and DENIED in part** as set forth above.

5. The parties will meet and confer about the case schedule in light of the Court's recent rulings by January 2, 2026.

    a. If the parties can agree, they will file a Stipulation to that effect.

    b. If not, each party will file a letter with the Court, no longer than five pages, describing and justifying its proposed case schedule by January 9, 2026.

6. The Court will hold an in-person Case Management Conference on the case schedule on January 15, 2026 at 1:00 P.M.

7. The parties may not file any new discovery motions without leave of the Court before that Case Manage Conference is held. This bar will remain in place even if that Case Management Conference is continued or otherwise rescheduled.

Date: December 4, 2025                              *s/ John F. Docherty*
                                                    JOHN F. DOCHERTY
                                                    United States Magistrate Judge